[No. D006363. Fourth Dist., Div. One. Sept. 11, 1989.]

GEORGE DUMAS, Plaintiff and Respondent, v.
WALTER STOCKER, Defendant and Appellant.

**[Opinion certified for partial publication.[1]]**

---

[1]Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts 3, 4, 5 and 7.

**COUNSEL**

Daley & Heft, Dennis W. Daley and Patricia A. Shaffer for Defendant and Appellant.

James V. Parziale for Plaintiff and Respondent.

**OPINION**

**FROEHLICH, J.**—Walter Stocker, defendant in a personal injury suit filed by George Dumas, appeals from a judgment, after jury trial, awarding Dumas $47,000 general damages and $141,000 punitive damages.

1. *Factual Background*

On January 1, 1981, Dumas and a friend, Irvin Moultrie, went to visit a friend living at an apartment building owned by Stocker. While making his way to the friend's apartment, Dumas fell through a hole in the walkway and immediately felt pain. Moultrie and a third person pulled Dumas from the hole, and drove Dumas back to Moultrie's home to pick up Dumas's girlfriend. Dumas's girlfriend drove Dumas to the Veterans Administration hospital, where he was refused treatment; he finally obtained treatment approximately two weeks after the accident.

As evidence of general damages, Dumas introduced an expert physician's testimony. Dumas's physician opined that as a result of the incident Dumas had suffered a musculoligamentous sprain, together with increased scarring of the nerve roots in and around the muscles of the lumbar region, causing him chronic pain. Stocker's medical expert testified that although he noted organic findings of scarring and fibrosis in the spinal canal, these organic findings were consistent with Dumas's prior surgical history (Dumas had numerous back problems prior to this incident). Stocker's expert suggested the pain Dumas claimed to be experiencing was exaggerated and involved a "functional overlay."

In support of his claim for punitive damages, Dumas introduced the testimony of an investigator, who described the condition of the walkway as old and rotten, and stated that the handrails were "loose." Photographs were also introduced to depict the condition of the property. Finally, a tenant in the apartment building testified that despite her numerous requests to Stocker, the hole had remained unrepaired for several months prior to the incident, the handrails were loose and remained unrepaired,

there were no light bulbs to illuminate the area, and the building was in a general state of disrepair.

The jury awarded $47,000 in general damages and an additional $141,000 in punitive damages. Stocker's motion for a new trial, based in part on his contention that punitive damages were excessive and the result of passion and prejudice, was denied. Stocker also opposed Dumas's proposed judgment because it included prejudgment interest on the entire award, including the punitive damage component. The court awarded interest on the entire judgment.[2]

### 2. Contentions on Appeal

Stocker raises claims of error as follows: (1) that the court erred in summarily adjudicating that Dumas had fallen into a hole on Stocker's property; (2) that the trial court erroneously prohibited defense testimony concerning "secondary gain syndrome" and Dumas's alleged history of exaggerated claims of injury; and (3) that the trial court's instruction concerning the weight to be given to objective and subjective evidence of the extent of Dumas's injury was erroneous. Stocker argues the cumulative effect of these errors was to deprive him of the ability to establish his defense that both the fact and extent of Dumas's claimed injury were fraudulent. For the reasons discussed below, we cannot sustain these contentions.

However, Stocker's final contention that the punitive damage award was excessive and based on passion and prejudice has substantial merit. After discussing the alleged pretrial and trial errors raised by Stocker, we will address Stocker's argument regarding the viability of the punitive damage award.

3.-5.*

. . . . . . . . . . . . . . . . . .

---

[2] Stocker also sought an order to reduce the punitive damage award to the amount alleged in the complaint (to wit: $75,000), to which Dumas responded with a request to deny the motion or in the alternative to amend his pleadings. However, Stocker filed his notice of appeal prior to resolution of the motion, and the court determined it thereafter lacked jurisdiction to rule on the motions.

* See footnote 1, *ante,* page 1262.

6. *The Punitive Damage Award Must Be Reversed Because It Is Unsupported by the Evidence and Was Apparently the Product of Passion and Prejudice*

The jury awarded $141,000 in punitive damages. In light of the evidence and closing argument, we must reverse the amount of punitive damages and remand for recalculation of the award.[10]

The standards for review of an award of punitive damages are well established. Reversal of an award is appropriate only where the record as a whole, viewed most favorably to the judgment, indicates the award was the result of passion and prejudice. (*Neal* v. *Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 927 [148 Cal.Rptr. 389, 582 P.2d 980].) Although a trial court's approval of the punitive damage award (by denial of a motion for new trial) is entitled to significant weight (see *Roemer* v. *Retail Credit Co.* (1975) 44 Cal.App.3d 926, 937 [119 Cal.Rptr. 82]), deference is not abdication. It is the duty and responsibility of an appellate court to intervene where the award is so grossly disproportionate or palpably excessive as to raise a presumption that it was the product of passion and prejudice. (*Rosener* v. *Sears, Roebuck & Co.* (1980) 110 Cal.App.3d 740, 749-750 [168 Cal.Rptr. 237], citing numerous cases.) We are also guided by the recognition that punitive damages constitute a windfall, create the anomaly of excessive compensation, and are therefore not favored in the law. (*Id.* at p. 750.)[11]

---

[10] Stocker challenges only the amount of the award, not the entitlement. The record amply supports the award of punitive damages in some amount, and we address only the question of the proper amount of that award.

[11] The entire concept of punitive damages has come under increasing scrutiny and criticism from all levels of the California courts and from countless commentators. (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1393 [241 Cal.Rptr. 67, 743 P.2d 1323] [holding that commission could not impose punitive damages in its awards; court noted disfavored nature of punitive damages]; *Beck* v. *State Farm Mut. Auto. Ins. Co.* (1976) 54 Cal.App.3d 347, 355 [126 Cal.Rptr. 602]; *Woolstrum* v. *Mailloux* (1983) 141 Cal.App.3d Supp. 1 [190 Cal.Rptr. 729] [recognizing that disfavored nature of award, coupled with unfettered discretion granted to juries in making award, requires heightened judicial vigilance in reviewing propriety of punitive damage awards].) Indeed, although the United States Supreme Court held the excessive fines clause of the Eighth Amendment inapplicable to civil punitive damage awards (see *Browning-Ferris Industries of Vermont, Inc.* v. *Kelco Disposal, Inc.* (1989) 492 U.S. __, __ [106 L.Ed.2d 219, 233-234, 109 S.Ct. 2909]), the court left open the issue of whether the due process clause of the Fourteenth Amendment may operate as a check on unbridled jury discretion (*id.* at p. __ [106 L.Ed.2d at p. 239]), as was suggested in dicta by Justice O'Connor's concurring opinion in *Banker's Life & Casualty Co.* v. *Crenshaw* (1988) 486 U.S. 71, 86-89 [100 L.Ed.2d 62, 77-79, 108 S.Ct. 1645]).

A. *Plaintiff's Failure to Introduce Evidence of Defendant's Wealth Renders the Punitive Damage Award Reversible as Unsupported by the Evidence*

An important consideration in assessing punitive damages is the net worth of the defendant. (*Devlin* v. *Kearny Mesa AMC/Jeep/Renault, Inc.* (1984) 155 Cal.App.3d 381, 390 [202 Cal.Rptr. 204].) The award must bear some reasonable relationship to the net worth of the defendant, and where the award is grossly disproportionate to the defendant's wealth, a presumption arises that it was the result of passion and prejudice. (*Little* v. *Stuyvesant Life Ins. Co.* (1977) 67 Cal.App.3d 451, 469 [136 Cal.Rptr. 653], citing numerous cases.)

Here, there was no evidence of Stocker's net worth. The only evidence introduced was (1) that Stocker purchased the subject property for between $50,000 and $125,000, and sold it for $153,000; (2) that in 1981 Stocker owned between two and fifteen apartment buildings (no evidence of his equity interest in the properties, or how many buildings he owned at the time of trial, if any, was introduced); and (3) that he filed numerous fictitious business name statements (again, no evidence of his income or equity interest, if any, in these businesses was introduced). There was no evidence of Stocker's net worth at the time of trial (see *Zhadan* v. *Downtown Los Angeles Motor Distributors, Inc.* (1979) 100 Cal.App.3d 821, 839 [161 Cal.Rptr. 225] [net worth at time of trial is proper measure]), nor did Dumas make any effort to obtain such evidence from Stocker, despite the statutory mechanism designed precisely to allow for discovery and production of such information for use at trial. (Civ. Code, § 3295, subd. (c).)

We conclude that the absence of any evidence of Stocker's net worth renders the amount of the award unsupported by the evidence. Several courts have reversed the amount of a punitive damage award, and remanded the issue for reconsideration after evidentiary hearings on net worth, where the plaintiff failed to introduce evidence of net worth of the defendant. (See *Alhino* v. *Starr* (1980) 112 Cal.App.3d 158, 179 [169 Cal.Rptr. 136] [judgment reversed for insufficiency of new trial order; court, noting need to ensure any new amount is not the result of passion and prejudice, instructed trial court to redetermine punitive damage award and to take evidence on net worth, if necessary]; see also *Barragan* v. *Banco BCH* (1986) 188 Cal.App.3d 283, 302 [232 Cal.Rptr. 758] [default judgment awarding punitive damages reversed as to amount because of absence of evidence of defendant's net worth]; see also *Forte* v. *Nolfi* (1972) 25 Cal.App.3d 656, 689 [102 Cal.Rptr. 455] [punitive damage award reversed as potentially excessive because the amount was awarded ". . . without taking any evidence of the resources of the alleged wrongdoers which it

sought to punish," and hence lacked evidentiary support].) These cases are directly applicable. Plaintiff made no effort to introduce evidence of defendant's wealth, and instead relied on innuendo and improper argument[12] to garner the award. In the absence of evidence of Stocker's wealth, we cannot determine, one way or the other, whether the award is reasonable in light of his resources, and reversal is appropriate. (*Seeley* v. *Seymour* (1987) 190 Cal.App.3d 844, 866-869 [237 Cal. Rptr 282] [court award reversed as excessive, noting no reported cases had ever approved six-figure punitive damage award against an individual defendant, and that award amounted to 200 percent of net worth of the individual according to only evidence of net worth introduced at trial].)

■ Dumas argues that plaintiff is entitled to an award of punitive damages even without any evidence of net worth, and that the obligation to introduce evidence of wealth is on the defendant. Reliance for this proposition is placed on a line of cases culminating in *Vossler* v. *Richards Manufacturing Co.* (1983) 143 Cal.App.3d 952 [192 Cal.Rptr. 219]. We decline to adopt the *Vossler* line of authority, and instead adhere to the *Alhino* approach for several reasons. In concluding plaintiff need not introduce evidence of wealth (*id.* at p. 965), *Vossler* relied on a number of cases, all of which were based on the decision in *Hanley* v. *Lund* (1963) 218 Cal.App.2d 633 [32 Cal.Rptr. 733].[13] *Hanley,* however, reached its conclusion on a unique rationale. In *Hanley,* the court noted the defendant *never challenged the award as excessive* (either at trial or on appeal), and thus concluded there was an implicit agreement that the defendant was sufficiently wealthy to absorb the penalty. (*Id.* at pp. 645-646.) In effect, *Hanley* held that under the circumstances of that case, and in light of the failure to raise the issue of excessiveness, the parties inferentially stipulated away the issue of net worth, rendering evidence by the plaintiff unnecessary. Thus, we find the *Vossler/Hanley* approach unpersuasive because the *Hanley* rule derives from the peculiar and narrow circumstances of that opinion. The subsequent cases have uncritically cited the *Hanley* holding, while ignoring its underlying rationale.

---

[12] In closing argument, Dumas's attorney made several references to the "fact" that Stocker was wealthy, including reference to Stocker being "on his yacht somewhere." These remarks undoubtedly infected the jury's award, and were wholly improper and without evidentiary support.

[13] In addition to *Hanley* itself, *Vossler* relied on the decisions in *Zimmer* v. *Dykstra* (1974) 39 Cal.App.3d 422 [114 Cal.Rptr. 380]; *Fletcher* v. *Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376 [89 Cal.Rptr. 78, 47 A.L.R.3d 286]; and *Nelson* v. *Gaunt* (1981) 125 Cal.App.3d 623 [178 Cal.Rptr. 167]. Both *Zimmer* (see 39 Cal.App.3d at p. 439) and *Fletcher* (see 10 Cal.App.3d at p. 404) relied on the *Hanley* decision for its authority. *Nelson* cited no authority for its holding (see 125 Cal.App.3d at p. 643). Indeed, *Nelson*'s holding directly contradicted the holding in *Alhino* v. *Starr, supra,* 112 Cal.App.3d 158, without discussion of *Alhino,* even though the same three justices authored both *Nelson* and *Alhino.*

Additionally, we believe the *Vossler/Hanley* rule is inconsistent with the dictates of numerous cases which admonish that an award of punitive damages, to serve its deterrent purpose, must involve some consideration of the defendant's net worth. (See, e.g., *Neal* v. *Farmers Ins. Exchange, supra,* 21 Cal.3d 910, 927-928.) The *Vossler/Hanley* rule permits consideration of this component to be ignored by the fact finder.[14] Moreover, the *Vossler/Hanley* rule frustrates meaningful appellate review of punitive damage awards (i.e., of whether the award was "grossly disproportionate"), since the absence of evidence of net worth precludes an appellate court from deciding whether an award might, for example, bankrupt the defendant. (See *Merlo* v. *Standard Life & Acc. Ins. Co.* (1976) 59 Cal.App.3d 5, 18 [130 Cal.Rptr. 416] [punitive damage award in excess of 30 percent of net worth reversed as excessive]; *Little* v. *Stuyvesant Life Ins. Co., supra,* 67 Cal.App.3d 451, 469-470 [punitive damage award in excess of 15 percent of net worth reversed as excessive]; *Burnett* v. *National Enquirer, Inc.* (1983) 144 Cal.App.3d 991, 1011-1012 [193 Cal.Rptr. 206, 49 A.L.R.4th 1125] [punitive damage award of 35 percent of net worth reversed as excessive].)

Finally, our adherence to *Alhino* and rejection of *Vossler/Hanley* rule is consonant with the traditional allocation of the burden of proof. In the compensatory damages arena, it is well established that plaintiff has the burden to prove the amount to which he is entitled with reasonable certainty. (*Carpenter Foundation* v. *Oakes* (1972) 26 Cal.App.3d 784, 799 [103 Cal.Rptr. 368].) Using hypothetical or speculative measures to prove compensatory damages is insufficient to satisfy plaintiff's burden of proof. (*Mendoyoma, Inc.* v. *County of Mendocino* (1970) 8 Cal.App.3d 873, 880-881 [87 Cal.Rptr. 740].) Adherence to the *Vossler/Hanley* rule, however, would obviate the traditional burden of proof (by shifting the burden to the defendant), and is inconsistent with the rule precluding recovery based on speculative (or, as here, nonexistent) evidence. *Vossler* suggests, as reason to depart from the traditional requirement that plaintiff carry the burden of proof, that the defendant is in a better position to know his financial condition than is the plaintiff. (*Vossler* v. *Richards Manufacturing Co., supra,* 143 Cal.App.3d at p. 964.) This ignores, however, the discovery and subpoena provisions which enable plaintiff to have such evidence under his control at trial. (Civ. Code, § 3295, subd. (c).) Plaintiff is well able to produce such evidence. We therefore disagree with *Vossler*'s conclusion (see 143 Cal.App.3d at p. 964) that it is appropriate to require a defendant affirmatively to prove its penurious financial condition as a precondition to any appellate challenge to the excessiveness of the award.

---

[14] This court has previously expressed discomfort with *Vossler* for precisely the reason that the absence of evidence of net worth could lead the fact finder improperly to speculate on net worth. (See *McArthur* v. *Bockman* (1989) 208 Cal.App.3d 1076, 1081, fn. 4 [256 Cal.Rptr. 522].)

### B. *The Award Must Be Reversed Because It Was the Product of Passion and Prejudice*

In this case, the absence of any evidence of Stocker's net worth was exacerbated by Dumas's counsel, whose closing argument was laced with strident appeals to the passion and prejudice of the jury and references to "facts" unsupported by any evidence. On several occasions he referred to Stocker as wealthy, stating he owned up to 15 apartment buildings, had a network of investments represented by fictitious business name filings, owned a good cash business, owned a yacht, and implied Stocker might be hiding his assets.[15] None of these statements was supported by any evidence. There was no evidence of net worth, nor of the number of buildings owned at time of trial. Neither was there evidence of Stocker's equity interest in such buildings. There was no evidence that the entities (for which the fictitious business names were filed) actually owned any assets, were solvent or were even in use. There was no evidence whether Stocker's interest in these businesses might be valuable. There was no evidence that Stocker owned either a "good cash business" or a yacht. Indeed, even as to the one piece of evidence of wealth (i.e., that he purchased the property for between $50,000 and $125,000, and later sold it for $153,000) there was no clear evidence of profit.

These improper arguments, coupled with attacks on Stocker's character as a greedy slumlord and an appeal to patriotic fervor by a lengthy (and improper) reference to Dumas's military record (see *Paolini* v. *City & County of S.F.* (1946) 72 Cal.App.2d 579, 587 [164 P.2d 916]), apparently convinced the jury to render an award of punitive damages which was more than three times the compensatory damage award, and *more* than the *total* amount of wealth having evidentiary support (i.e., the possible gross profit on the sale of the building).

### C. *Conclusion*

The failure to introduce evidence of wealth provided fertile soil for rampant speculation by a sympathetic jury. These fertile grounds were tilled with appeals to patriotism and vitriolic attacks on Stocker's character, and sown with the seeds of "facts" never introduced into evidence. From this

---

[15] The objections to the references which were interposed were sustained as to the "phrasing" of the argument, but there was no admonishment to the jury to disregard the improper remarks. Ordinarily, a failure to request an admonishment may waive the claimed prejudice. (*Hilliard* v. *A. H. Robins Co.* (1983) 148 Cal.App.3d 374, 406-407 [196 Cal.Rptr. 117].) However, where the amount of the award raises a presumption of passion or prejudice, as here, we believe reversal is not precluded merely because a party neglected to couple his objections with requests for curative admonitions.

garden the plaintiff reaped an award of punitive damages which, we conclude, was the fruit of passion and prejudice. Accordingly, we are compelled to reverse the amount of punitive damages, and to remand for redetermination of the award in light of defendant's net worth. The plaintiff may invoke the procedures of Civil Code section 3295, subdivision (c) to compel production of evidence of Stocker's net worth.

7. *The Court Properly Awarded Prejudgment Interest on the Entire Award**

. . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment as to the amount of punitive damages is reversed, and is remanded to the trial court for redetermination based on evidence of defendant's net worth, consistent with the opinions expressed herein. In all other respects, the judgment is affirmed. Respondent shall recover costs on appeal.

Kremer, P. J., and Todd, J., concurred.

---

*See footnote 1, *ante,* page 1262.