[No. G004777. Fourth Dist., Div. Three. Dec. 20, 1989.]

BARBARA N. FENLON, Plaintiff and Respondent, v. RONNIE BROCK et al., Defendants and Appellants.

**[Opinion certified for partial publication.[1]]**

---

[1] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III, IV, V and VI.

**COUNSEL**

James R. Goff for Defendants and Appellants.

Watts & Watts and Thomas C. Watts III for Plaintiff and Respondent.

**OPINION**

**WALLIN, J.**—Barbara M. Fenlon filed this action against Ronnie and Earl Brock, Jo and John Boyd and San Juan Travel for conversion of personal property, fraud, rescission and restitution and breach of contract. The dispute related to the sale, and subsequent repossession, of a travel agency by the Brocks and the Boyds to Fenlon. The Brocks and the Boyds cross-complained against Fenlon for default under a security agreement and repossession of collateral, fraud, interference with economic advantage and breach of contract. Following a jury trial the court entered judgment on a special verdict for Fenlon awarding her $95,000 in compensatory damages and $40,000 in punitive damages. The Brocks and the Boyds were awarded nothing on their cross-complaint; however, the court reduced the compensatory damage award by $39,055.86 which was the amount Fenlon owed them on a promissory note. Motions for a new trial and for judgment notwithstanding the verdict were denied. The Boyds did not appeal. In the published portion of the opinion we reject the Brocks' contentions that punitive damages could not be awarded in the absence of evidence of their financial position, the punitive damages award is excessive, and that punitive damages violate the Eighth Amendment prohibition against excessive fines.

I

Fenlon purchased San Juan Travel from the Brocks and the Boyds in March 1980 for $95,000. She paid $27,500 cash and executed a promissory note for $67,500 payable in monthly installments. Fenlon was required to place a cash deposit in Brentwood Savings of $25,000 as security for the note. She also executed a security agreement pledging the sublease for the business premises, the furniture, fixtures and equipment, leasehold improvements, the name "San Juan Travel," the month-to-month leases on the teleticketing machine and computer, and the Air Traffic Conference (ATC) and "IATA" appointments as collateral. To qualify with ATC to own the agency Fenlon hired Ronnie Brock to manage the business for two years after which time Fenlon hoped to be qualified to manage it herself. She also hired Jo Boyd on a part-time basis.

In late 1981 San Juan Travel began to have financial troubles and Fenlon was late with some of the note payments. In November the Brocks and the Boyds suggested to Fenlon that if she brought the note current they would reduce the payments for December and January and add the accrued interest to the principal of the note. Fenlon declined the offer. Instead she borrowed funds and liquidated some personal assets to cover the business expenses.

On December 4, 1981, ATC, which provided travel agencies with the plates for issuing airline tickets, told Fenlon they had not received the payment on her account. She went to the bank to wire funds. On December 10, ATC told Fenlon the funds had not been received and they were sending someone to pick up the payment or the plates. Ronnie Brock and Jo Boyd became aware of the problem. Fenlon believed the bank had mistakenly failed to send the funds. She did not want to liquidate her other assets to make the payment. Ronnie was convinced ATC was going to pick up the plates. According to Fenlon, on Friday December 11, 1981, the Brocks and the Boyds agreed that the $25,000 security deposit would be released. A $10,000 payment would be applied to the promissory note and the remaining $15,000 would be used to pay all delinquent accounts and for operating expenses. Six checks were drawn on the security deposit account, two payable to ATC for $2,800.44 and $5,350.91, one for $2,565.62 for bank overdrafts, one for $799 for rent, and two checks for $3,500 and $10,000 were made payable to Ronnie.

On Saturday December 12, Ronnie Brock and Jo Boyd met with bank officials regarding the financial condition of the agency. They were told the agency had several bank overdrafts. Fenlon testified she was not told about the meeting or asked to be present. When Fenlon arrived at the office on Monday December 14, Ronnie handed her a letter informing her that she and Jo were repossessing the business. Fenlon was asked to leave and her personal belongings were taken to her car by John Boyd. Ronnie testified they decided to repossess the business because Fenlon was not running it in the manner they thought it should be run and client funds were being jeopardized. Jo Boyd testified they never told Fenlon they felt she was insolvent, or demanded the balance due under the promissory note. She also testified they repossessed the agency because they felt Fenlon was not able to run it effectively, and that she had jeopardized their security.

## II

Fenlon was awarded $95,000 in compensatory damages which was reduced by $39,055.86, the amount she owed the Brocks on the promissory note. She was also awarded $40,000 in punitive damages. The Brocks contend the punitive damage award must be reversed because there was insufficient evidence of malice, there was no evidence of the Brocks' financial condition, and the award is excessive. To justify an award of punitive damages the defendant must be guilty of oppression, fraud or malice and must act with the intent to vex, injure or annoy, or with a

conscious disregard of plaintiff's rights. (Civ. Code, § 3294.)[2] ■ Our review begins and ends with a determination of whether there is any substantial evidence, contradicted or uncontradicted, which supports the jury's conclusion. (*Beck* v. *State Farm Mut. Auto. Ins. Co.* (1976) 54 Cal.App.3d 347, 354 [126 Cal.Rptr. 602].) ■ Viewing the record as a whole in the light most favorable to the judgment (see *Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, 65 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878]), there was substantial evidence from which the jury could conclude the defendants acted with malice. Ronnie Brock and Jo Boyd both testified they repossessed the agency simply because they were dissatisfied with the manner in which it was run by Fenlon. Neither of them could point to any specific impairment of the security. They never told Fenlon they believed she was insolvent nor did they ever accelerate the amount due under the promissory note. Only the December 10 payment was overdue when they repossessed the business on December 14. They agreed to release the security deposit and apply $10,000 of the proceeds to the promissory note, leaving $15,000 to satisfy outstanding debts and cover overhead for the next few months, and had Fenlon make all the checks payable either directly to Ronnie or to creditors of the business. Once the checks were drawn, and without warning, they locked Fenlon out of her business. The evidence was sufficient.

■ We reject the Brocks' contention that the punitive damages award cannot stand in the absence of evidence of the Brocks' net worth.[3] In *Neal* v. *Farmers Ins. Exchange* (1978) 21 Cal.3d 910 [148 Cal.Rptr. 389, 582 P.2d 980] the Supreme Court concluded that in determining whether an award of punitive damages is excessive the court must consider the nature of the defendant's acts, the amount of compensatory damages awarded, and the wealth of the defendant. (*Id.* at p. 928.) Although *Neal* provides the defendant's wealth is a factor the court should consider, it does not hold a punitive damages award cannot stand without evidence of the defendant's wealth.

In *Hanley* v. *Lund* (1963) 218 Cal.App.2d 633 [32 Cal.Rptr. 733] the court upheld a punitive damages award in the absence of any evidence of the defendant's financial condition. The court stated: "The parties were content to go to the jury on the implied basis that defendant's ability to pay was consistent with his occupation. He did not contend, either in the trial court or here, that in fact the award made was excessive in the light of his financial status. Since no authority, anywhere, expressly directs that the

---

[2] The degree of proof required under current law is clear and convincing evidence (Civ. Code, § 3294, subd. (a)); however, at the time of trial of this action it was proof by a preponderance of the evidence.

[3] This contention was not presented in the trial court.

plaintiff must introduce evidence of defendant's wealth when seeking exemplary damages, we find no merit in defendant's contention in this regard." (*Id.* at p. 646.) Similarly, the Brocks have never argued the punitive damage award is excessive in light of their financial status. Rather they contend we are to presume the award is excessive in the absence of evidence of their net worth. We find no basis for such a presumption.

Since *Hanley,* numerous cases have upheld punitive damage awards absent evidence of the defendant's wealth. The long-standing rule in California is that the plaintiff may, but is not required to, introduce evidence of the defendant's financial condition when seeking punitive damages. On the other hand, the defendant may present evidence of his or her inability to pay. (*Greenfield* v. *Spectrum Investment Corp.* (1985) 174 Cal.App.3d 111 [219 Cal.Rptr. 805]; *Vossler* v. *Richards Manufacturing Co.* (1983) 143 Cal.App.3d 952 [192 Cal.Rptr. 219]; *Nelson* v. *Gaunt* (1981) 125 Cal.App.3d 623 [178 Cal.Rptr. 167]; *Zimmer* v. *Dykstra* (1974) 39 Cal.App.3d 422 [114 Cal.Rptr. 380]; *Fletcher* v. *Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376 [89 Cal.Rptr. 78, 47 A.L.R.3d 286]. See also *McArthur* v. *Bockman* (1989) 208 Cal.App.3d 1076, 1081, fn. 4 [256 Cal.Rptr. 522].) In *Vossler* v. *Richards Manufacturing Co., supra,* 143 Cal.App.3d 952, a compensatory damages award of $25,000 and a punitive damages award of $500,000 were upheld in the absence of evidence of the defendant's wealth. The *Vossler* court stated that not only was it the clear rule in California, but "[t]he trend of modern decisions in other jurisdictions is to place the burden of producing evidence of wealth on the wrongdoer, permitting the defendant to establish its financial inability to pay punitive damages." (*Id.* at p. 963.)

Other divisions of this court have recently rejected the *Hanley/Vossler* line of cases, holding that a punitive damage award cannot stand absent evidence of the defendant's financial condition. (*Dumas* v. *Stocker* (1989) 213 Cal.App.3d 1262 [262 Cal.Rptr. 311] (followed in *People* ex rel. *Dept. of Transportation* v. *Grocers Wholesale Co.* (1989) 214 Cal.App.3d 498 [262 Cal.Rptr. 689]).) We find those cases to be erroneously decided and reject their analysis.

*Dumas* relied heavily on *Alhino* v. *Starr* (1980) 112 Cal.App.3d 158 [169 Cal.Rptr. 136], where the court reversed the judgment due to the insufficiency of a new trial order and, noting the need to ensure any new amount of punitive damages was not the result of passion or prejudice, instructed the trial court to take evidence on the defendant's net worth, if necessary. However, the identical appellate panel subsequently concluded in *Nelson* v. *Gaunt, supra,* 125 Cal.App.3d 623, that "[t]he courts of this state

have consistently held that in determining the amount necessary to impose the appropriate punitive effect, the court is *entitled* to consider the wealth of the defendant [citation]. The object is to make an example as well as a punishment to fit the offense and in determining the amount necessary to impose a punitive effect, the jury *may* consider the wealth of the defendant [citation]. Thus, no review of a defendant's wealth is mandated before an award of punitive damages can be made." (*Id.* at p. 643.) In *Vossler* the court noted this same discrepancy. It concluded that given the lack of clarity in the actual disposition of the *Alhino* case and the fact that the same three justices serving on the panel in the later *Nelson* case issued a direct and unequivocal decision on the issue, "it cannot be maintained that *Alhino* stands for the proposition that plaintiff is required to introduce evidence of defendant's wealth before an award of punitive damages can stand." (*Vossler v. Richards Manufacturing Co., supra,* 143 Cal.App.3d at p. 962.) We agree with *Vossler.*

*Dumas* next relied on *Barragan v. Banco BCH* (1986) 188 Cal.App.3d 283 [232 Cal.Rptr. 758]. *Barragan,* however, did not address the issue of whether an award of punitive damages could stand absent evidence of defendant's net worth. In *Barragan* the plaintiff, in a default "prove-up" hearing, introduced conflicting evidence of the defendant bank's net worth. The court ordered a new hearing for a redetermination of the bank's net worth. Since the bank was not a participant in the default hearing, it, unlike the Brocks, had no opportunity to challenge the accuracy of the information by presenting its own data and the trial court did not make a finding on the issue. (*Id.* at p. 302.) Similarly, *Seeley v. Seymour* (1987) 190 Cal.App.3d 844 [237 Cal.Rptr. 282], also relied upon in *Dumas,* did not address the issue of whether a punitive damages award could stand in the absence of evidence of the defendant's net worth. *Seeley* reversed a punitive damages award after an examination of the wrongful conduct and the actual harm suffered. The only evidence of the defendant's net worth indicated the punitive damages awarded were approximately twice the defendant's net worth which supported the conclusion that the amount was excessive. (*Id.* at pp. 866-869.) Only *Forte v. Nolfi* (1972) 25 Cal.App.3d 656, 689 [102 Cal.Rptr. 455] and *Devlin v. Kearny Mesa AMC/Jeep/Renault, Inc.* (1984) 155 Cal.App.3d 381 [202 Cal.Rptr. 204] tend to support the analysis of *Dumas,* but *Forte* merely mentions it in passing and *Devlin,* like *Barragan,* was a default judgment. Some evidence of net worth may be appropriate when the defendant is being punished but is not present to contest the amount. Neither case can overcome the substantial body of authority supporting and following the *Hanley/Vossler* rule. *People* ex rel. *Dept. of Transportation v. Grocers Wholesale Co., supra,* 214 Cal.App.3d 498 relied solely upon *Dumas* in rejecting the *Hanley/Vossler* rule and we, therefore, do not find it persuasive.

Both *Dumas* and *Grocers Wholesale* suggest policy reasons for rejecting the *Hanley/Vossler* rule. Specifically, they concluded the absence of evidence of the defendant's net worth could deprive the appellate court of a meaningful review of punitive damages awards and could shift the traditional burden of proof from plaintiff to defendant. We reject both proffered policies. The defendant always has the ability to introduce evidence of his financial condition to preserve a challenge to a punitive damages award on the ground that it is excessive as a percentage of his net worth, and the defendant also has the best access to such information. It is not the duty of a litigant to create a record for an opponent's potential appeal. Certainly under most circumstances the plaintiff will want to introduce evidence of the defendant's financial condition, but we find no authority apart from *Dumas* and *Grocers Wholesale* that compels the introduction of such evidence.

Requiring plaintiff to prove defendant's net worth is also unfair to a wealthy defendant and, under current law, potentially unnecessarily time-consuming as well as unfair to all defendants. A wealthy defendant who has been found liable for punitive damages will ordinarily be delighted to have plaintiff omit proof of its net worth and permit the jury to determine the amount without information on the subject.[4] Presumably the award will be low and the defendant will retain the option to contend it is excessive based on the compensatory damages awarded and the conduct involved.

Since plaintiff ordinarily cannot discover information on defendant's net worth until "a prima facie case of liability for [punitive] damages" has been presented (Civ. Code, § 3295, subd. (a)), a plaintiff who believes the subpoenaed information is inaccurate, incomplete or misleading will be forced to request a continuance during trial to obtain accurate information which he was barred from obtaining earlier. On the other hand, if plaintiff can continue to elect not to present net worth information, the problem may be avoided.

---

[4] *Dumas* v. *Stocker, supra,* 213 Cal.App.3d 1262, itself contains the potential for an unfair result because it requires plaintiff to introduce evidence of Stocker's net worth in a retrial of punitive damages. In the first trial the jury awarded $47,000 general and $141,000 punitive damages. The only evidence of Stocker's net worth was that he "owned between two and fifteen buildings" several years before the trial. (*Id.* at p. 1267.) His decision not to introduce any evidence on the subject suggests the possibility that he is a very wealthy man. The *Dumas* court invited the plaintiff to discover accurate current financial information on Stocker prior to the retrial. (*Id.* at pp. 1269, 1271.) If the evidence does establish that Stocker is a very wealthy man, the jury presumably would be justified in awarding an even greater amount and Stocker will lose the benefit of his previous trial strategy not to present financial information. In other words application of the rule to his own case may result in Stocker's appellate "victory" being Pyrrhic at best.

A defendant of modest means will, under current law, not hesitate in the punitive damages phase of the trial to present his financial situation to the jury. He knows punitive damages will be awarded and has an incentive to minimize the amount.[5] He is not in the position of appearing to concede that his conduct merits punitive damages since that issue is now determined, at his option, in the first phase of a bifurcated trial before his net worth is considered by the jury. (Civ. Code, § 3295, subd. (d).)

 Nothing in the record supports the Brocks' contention that the award itself was excessive. The amount of punitive damages is within the discretion of the jury. (*Nelson* v. *Gaunt, supra,* 125 Cal.App.3d 623, 644.) Fenlon was awarded $95,000 in compensatory damages and $40,000 in punitive damages. The compensatory damages award was offset by $39,055.86, the amount still owing on the promissory note. Our review of punitive damages awards is guided by the " 'historically honored standard of reversing as excessive only those judgments which the entire record, when viewed most favorably to the judgment, indicates were rendered as the result of passion and prejudice. . . .' [Citation.]" (*Neal* v. *Farmers Ins. Exchange, supra,* 21 Cal.3d 910, 927.) Viewed as a whole an award which is less than one-half of the compensatory damages and approximately equal to the amount credited to defendants on the promissory note is not excessive.

 Finally, we reject the Brocks' argument that the punitive damages award is an excessive fine under the Eighth Amendment to the United States Constitution and article I, section 17 of the California Constitution. There are no grounds on which to find the award excessive. Furthermore, as this is a purely civil penalty between private parties, the Eighth Amendment does not apply. (*Browning-Ferris Industries of Vermont, Inc.* v. *Kelco Disposal, Inc.* (1989) 492 U.S. 257 [106 L.Ed.2d 219, 109 S.Ct. 527]; *Downey Savings & Loan Assn.* v. *Ohio Casualty Ins. Co.* (1987) 189 Cal.App.3d 1072, 1100-1101 [234 Cal.Rptr. 835].)

III-VI*

. . . . . . . . . . . . . . . . . . . .

---

[5] We note this case was tried under the rules existing prior to January 1, 1988, and the punitive damages were determined in the main action. As we shall discuss, however, the amount awarded was not excessive under the circumstances.

*See footnote, *ante,* page 1174.

The judgment is affirmed.

Crosby, Acting P. J., and Parslow, J.,* concurred.

---

* Assigned by the Chairperson of the Judicial Council.