[No. B053165. Second Dist., Div. Seven. Nov. 6, 1992.]

CUMMINGS MEDICAL CORPORATION, a California Corporation, et al., Plaintiffs, Cross-defendants and Appellants, v.
OCCUPATIONAL MEDICAL CORPORATION OF AMERICA, INC., et al., Defendants, Cross-complainants and Respondents.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 975(b) and 976.1, this opinion is certified for partial publication. The portions directed to be published are: the summary, Facts and Proceedings, part II and Disposition.

1292

**COUNSEL**

Baker & McKenize, Gordon E. Bosserman, John R. Sommer and Michael J. Egan for Plaintiffs, Cross-defendants and Appellants.

Aiken & Mansuy, Lionel T. Aiken, Allen, Matkins, Leck, Gamble & Mallory and George T. McDonnell for Defendants, Cross-complainants and Respondents.

**OPINION**

**JOHNSON, J.**—In this action plaintiffs (collectively referred to as Cummings) filed a complaint against defendants (collectively referred to as OMCOA). OMCOA filed a cross-complaint against Cummings. Cummings

then filed a cross-complaint against OMCOA. As a sanction for discovery abuse, the trial court struck Cummings' complaint and cross-complaint and the answer to OMCOA's cross-complaint. The court entered a default judgment in favor of OMCOA on its cross-complaint. Cummings filed a timely appeal[1] contending the trial court abused its discretion in terminating the actions in favor of OMCOA as a discovery sanction against Cummings and in awarding punitive damages to OMCOA in the absence of notice to Cummings of the amount claimed and in the absence of evidence of Cummings' net worth. We affirm the judgment but modify the award of punitive damages.

## FACTS AND PROCEEDINGS

This action stems from OMCOA's purchase of the Valley Medical Industrial Center (Valley Medical) from Cummings in July 1985. Under the terms of the agreement OMCOA executed a $700,000 promissory note in favor of Cummings to be paid off in three installments of $233,333.33, on January 1, 1986, January 1, 1987, and January 1, 1988. Under the agreement, Cummings warranted the accuracy of certain disclosures concerning the current and projected financial condition of Valley Medical, and Cummings agreed not to compete with OMCOA by practicing medicine within a seven-mile radius of Valley Medical for a period of three years.

In April 1986, Cummings filed this action against OMCOA, asserting causes of action for moneys due under a promissory note, intentional infliction of emotional distress and slander. This action was primarily based upon OMCOA's alleged failure to make its first required $233,333.33 installment payment under the promissory note on January 1, 1986.

OMCOA answered and filed a cross-complaint against Cummings, alleging 11 causes of action which were substantially based upon Cummings' alleged misrepresentations concerning the medical practice's financial condition and Cummings' violation of the covenant not to compete.

Thereafter Cummings filed a cross-complaint against OMCOA for breach of the purchase agreement, breach of the covenant of good faith and fair dealing, unfair competition, interference with prospective economic advantage and deceit.

As we discuss more fully in part I below, OMCOA's attempts at discovery in this action were stymied by Dr. Cummings' refusal to attend deposition

---

[1]We construe the trial court's judgment to include dismissal of Cummings' actions against OMCOA.

sessions and refusal to comply with requests for production of documents. Dr. Cummings falsely denied the existence of certain categories of documents requested by OMCOA; falsely claimed an edited tape recording was a true and correct copy of the original; and falsely claimed to be suicidal and taking Valium in order to obtain an order staying his deposition. On numerous occasions, Cummings promised to deliver certain documents to OMCOA but failed to do so. Cummings persisted in delaying the production of documents even after deadlines for production were ordered by the trial court.

After having to go to the trial court three times for orders requiring Cummings to comply with its discovery requests, OMCOA moved the court for an order dismissing Cummings's complaint and cross-complaint and striking Cummings's answer to OMCOA's cross-complaint and entering default thereon. OMCOA listed 12 separate abuses of the discovery process by Cummings with documentary evidence backing up each claimed abuse.

The trial court held two lengthy hearings on the motion and concluded the motion for terminating sanctions should be granted. The court thereafter entered an order striking Cummings's complaint and cross-complaint as well as its answer to OMCOA's cross-complaint. The court entered a default on the OMCOA cross-complaint.

Following the entry of Cummings's default on OMCOA's cross-complaint the court heard evidence on the damages claimed by OMCOA. The testimony disclosed that Cummings was paid $700,000 in cash at the time OMCOA purchased Valley and at that time Valley had a fair market value of $480,000. With inclusion of interest, Cummings received as a result of his misconduct $354,300. Further, as a result of Cummings's violation of the covenant not to compete, OMCOA lost and Cummings profited in the sum of $248,820 per year. These profits reasonably continued for a period of five years for a total profit to Cummings of $1,244,100.

By judgment dated June 20, 1990, the court awarded OMCOA $4,367,717 including $1 million in punitive damages.

I. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN ORDERING TERMINATING SANCTIONS.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 1291.

## II. There Was an Adequate Basis for the Award of Punitive Damages.

### A. *Cummings Was on Notice of the Amount of Punitive Damages OMCOA Sought.*

Code of Civil Procedure section 580 provides, "The relief granted to the plaintiff [by way of a default judgment] cannot exceed that which he shall have demanded in his complaint . . . ." California courts have consistently interpreted this section to mean that before a default is entered against the defendant the defendant must be put on notice of the specific amount of damages demanded. (*Greenup* v. *Rodman* (1986) 42 Cal.3d 822, 826 [231 Cal.Rptr. 220, 726 P.2d 1295].) Normally this notice is provided by the complaint. (See, e.g., *Becker* v. *S.P.V. Construction Co.* (1980) 27 Cal.3d 489, 494 [165 Cal.Rptr. 825, 612 P.2d 915].) However, where the plaintiff is prohibited by statute from stating the amount of damages in the complaint (see e.g., Code Civ. Proc., § 425.10) the plaintiff must provide the defendant with separate notice of the damages sought to be recovered. (See, e.g., Code Civ. Proc., § 425.11; *Wiley* v. *Rhodes* (1990) 223 Cal.App.3d 1470, 1473 [273 Cal.Rptr. 279].)

This notice requirement is not limited to cases where a default is entered because the defendant has failed to answer. It also applies in cases, such as the one before us, where a default is entered after the defendant's answer is stricken as a discovery sanction. (*Greenup* v. *Rodman, supra,* 42 Cal.3d at p. 828.)

Cummings concedes OMCOA's amended cross-complaint, on which the default judgment was based, specifies the amount of punitive damages OMCOA sought.[5] Nevertheless, Cummings argues, the statement of punitive damages violated Civil Code section 3295, subdivision (e).[6] Because inclusion of the amount of punitive damages violated the statute it did not constitute notice to Cummings and Cummings "could ignore it."

As authority for this argument Cummings relies on *Schwab* v. *Rondel Homes, Inc.* (1991) 53 Cal.3d 428 [280 Cal.Rptr. 83, 808 P.2d 226]. *Schwab*

---

[5]The cross-complaint sought punitive damages "in an amount in excess of $2,000,000.00". This language provides sufficient notice to support a default judgment of $2 million or less. (*Engebretson & Co.* v. *Harrison* (1981) 125 Cal.App.3d 436, 444-445 [178 Cal.Rptr. 77].)

[6]Civil Code section 3295, subdivision (e) provides, "No claim for exemplary damages shall state an amount or amounts."

was a case falling within the provisions of Code of Civil Procedure sections 425.10 and 425.11. Under this legislative scheme, a plaintiff in a personal injury action is prohibited from stating the amount of actual or punitive damages in the complaint. (Code Civ. Proc., § 425.10.) However, "the plaintiff shall give notice to the defendant of the amount of special and general damages sought to be recovered . . . before a default may be taken. . . ." (Code Civ. Proc., § 425.11.) The plaintiffs in *Schwab* prayed for damages for mental and emotional distress and for further pecuniary losses in amounts according to proof and punitive damages in the amount of $500,000. (53 Cal.3d at p. 430.) Defendants failed to answer and a default was entered. No notice under Code of Civil Procedure section 425.11 was sent to defendants. At the prove-up hearing the trial court awarded each plaintiff general damages of $50,000 and punitive damages of $100,000.

The Supreme Court reversed the default judgment in *Schwab*, but *not* for the reason suggested by Cummings: failure to give a separate notice under Code of Civil Procedure section 425.11 of the amount of damages sought. The court had previously held in *Greenup v. Rodman, supra*, 42 Cal.3d at page 830, failure to give notice under Code of Civil Procedure section 425.11 is not fatal if the allegations in the complaint give sufficient notice to defendants of the damages sought. The judgment in *Schwab* was reversed because the court found the complaint did not afford defendants sufficient notice of the special and general damages sought. (53 Cal.3d at p. 435.)

The appropriate precedent here is *Uva v. Evans* (1978) 83 Cal.App.3d 356 [147 Cal.Rptr. 795]. In that personal injury case, contrary to Code of Civil Procedure section 425.10, plaintiff's complaint specifically requested $30,000 in general damages. When defendant failed to answer, plaintiff obtained a default and a default judgment in that amount without giving notice to the defendant of the amount of damages sought to be recovered as required by Code of Civil Procedure section 425.11. On appeal, defendant made essentially the same argument Cummings makes in the present case: the statutory prohibition against specifying the amount of damages in the complaint renders such specification a nullity for purposes of the notice required by Code of Civil Procedure section 580. The Court of Appeal rejected that argument, stating: "Right or wrong, the complaint filed and served herein did contain a recitation of the damages sought and the judgment did not exceed the amount requested. In this case, section 580 was fully complied with. . . . [D]efendant suffered no conceivable prejudice from the procedure followed here." (83 Cal.App.3d at pp. 360-361.)

We adopt the reasoning of *Uva* v. *Evans* which we find entirely consistent with the views expressed by the Supreme Court in *Greenup* and *Schwab*.[7] Where, as here, the defendant admits receiving actual notice of the punitive damages sought it would be a travesty of justice, much less logic, to hold defendant did not have actual notice.

Logic notwithstanding, Cummings contends we must ignore the notice of damages in OMCOA's cross-complaint or else Civil Code section 3295, subdivision (e) will become meaningless. We disagree. When the plaintiff improperly states in the complaint the amount of punitive damages being sought the defendant has several remedies available including a motion to strike under Code of Civil Procedure section 435, subdivision (b)(1) (*Uva* v. *Evans*, *supra*, 83 Cal.App.3d at p. 360, fn. 2) or a motion for sanctions under Code of Civil Procedure section 128.5. (See *Wiley* v. *Rhodes*, *supra*, 223 Cal.App.3d at p. 1472, fn. 2.) In this case, Cummings failed to pursue either of these remedies.

B. *Punitive Damages Were Properly Based on Evidence of the Profitability of Cummings's Fraudulent Conduct.*

Cummings argues the award of punitive damages must be reversed because there was no evidence of defendants' net worth introduced at the default prove-up. For the reasons discussed below, we hold that where the defendant has been guilty of fraud, punitive damages may properly be based on evidence of the profitability of the defendant's misconduct.

The purpose of punitive damages "is to punish wrongdoing and thereby to protect [the public] from future misconduct, either by the same defendant or other potential wrongdoers." (*Adams* v. *Murakami* (1991) 54 Cal.3d 105, 110 [284 Cal.Rptr. 318, 813 P.2d 1348].)

Evidence of the defendant's financial condition is relevant to a punitive damages award in two ways. "[O]bviously, the function of deterrence . . . will not be served if the wealth of the defendant allows him to absorb the award with little or no discomfort. . . . By the same token, of course, the function of punitive damages is not served by an award which, in light of the defendant's wealth and the gravity of the particular act, exceeds the level necessary to punish and deter." (*Neal* v. *Farmers Ins. Exchange*

---

[7]The court, in *Schwab*, was clearly aware of *Uva* v. *Evans* and had the opportunity to disapprove it but did not. (53 Cal.3d at pp. 432, fn. 5, 434, fn. 7; *id.* at p. 436 (dis. opn. of Mosk, J.).)

(1978) 21 Cal.3d 910, 928 [148 Cal.Rptr. 389, 582 P.2d 980], fns. and citations omitted.)

Although appellate courts have sometimes used the terms "wealth," "financial condition" and "net worth" interchangeably, (see, e.g., *Wollersheim v. Church of Scientology* (1992) 4 Cal.App.4th 1074, 1095 [6 Cal.Rptr.2d 532]; *Dumas v. Stocker* (1989) 213 Cal.App.3d 1262, 1268 [262 Cal.Rptr. 311]), clearly these terms are not synonymous. And, while "net worth" is probably the financial measurement most often used in setting the amount of punitive damages, no court has held it is the *only* permissible measurement. As the Supreme Court noted in *Adams*: "Various measures of a defendant's ability to pay a punitive damages award have been suggested. . . . We decline at present, however, to prescribe any rigid standard for measuring a defendant's ability to pay." (54 Cal.3d at p. 116, fn. 7.)

As the court in *Adams* recognized, the key question before the reviewing court is not "what is the defendant's net worth?" Rather, the question is "whether the amount of damages 'exceeds the level necessary to properly punish and deter.' " (54 Cal.3d at p. 110, citations omitted.)

 In relating this inquiry to the defendant's wealth, courts and commentators have often looked to the profitability of the defendant's misconduct. (See, e.g., *Grimshaw v. Ford Motor Co.* (1981) 119 Cal.App.3d 757, 819 fn. 14, 820 [174 Cal.Rptr. 348]; *Vossler v. Richards Manufacturing Co.* (1983) 143 Cal.App.3d 952, 967 [192 Cal.Rptr. 219] [disapproved on other grounds]; *Adams, supra,* 54 Cal.3d at pp. 115-116; *Hawkins v. Allstate Ins. Co.* (1987) 152 Ariz. 490 [733 P.2d 1073, 1080-1081]; *Cox v. Stolworthy* (1972) 94 Idaho 683 [496 P.2d 682, 690]; Mallor & Roberts, *Punitive Damages: Toward a Principled Approach* (1980) 31 Hastings L.J. 639, 667-668; Owen, *Punitive Damages in Products Liability Litigation* (1976) 74 Mich. L.Rev. 1257, 1316; 1 Ghiardi & Kircher, Punitive Damages Law & Practice (1992 Supp.) § 5.36, p. 114; see also, *Adams, supra,* 54 Cal.3d at p. 116, fn. 7, noting, "The Association for California Tort Reform, appearing as amicus curiae on behalf of defendant, advocates the profitability of the defendant's misconduct as the proper measure [of the defendant's financial condition].")

The defendant's profits from misconduct are objectively based and uniquely appropriate as the basis for punitive damages. For example, an insurer who knowingly induces an individual to purchase a grossly inadequate policy for an unreasonable sum undoubtedly "profits" from the use of

excess premiums it improperly gained. Removing the gain in such a case, in addition to requiring the insurer to compensate the plaintiff for its actual losses, makes it less likely the defendant will repeat the conduct. A gain-based measure of this sort sends a clear signal to defendants that such misconduct does not pay and, thus, serves the deterrent function of punitive damages.

Of course, a gain-based measure of punitive damages may not always adequately serve the deterrent function. A defendant may, for example, escape effective deterrence if its conduct is rarely challenged in litigation. (See Mallor & Roberts, *supra*, 31 Hastings L.J. at p. 650 and Owen, *supra*, 74 Mich. L.Rev. at p. 1285 [noting the deterrent effect of punitive damages depends, in part, on the defendant's "perception of the likelihood of his being identified and punished."].) But even if taking away the defendant's ill-gotten gains may sometimes not be enough to deter similar conduct, it is never too much.

Deterrence is not the only function of punitive damages. As our Supreme Court has made clear, punitive damages function as punishment as well. (*Neal, supra*, 21 Cal.3d at p. 928.) In our view, it is proper and fitting to "punish" a defendant by stripping the defendant of wealth gained through defrauding the plaintiff. A punitive damages award specifically tailored to this objective can never be "excessive."[8]

In the present case, OMCOA proved compensatory damages on its fraud cause of action consisting of the difference between the fair market value of Valley and what OMCOA paid for it ($220,000), interest on the $700,000 OMCOA paid to Cummings ($134,000), and OMCOA's loss of profit resulting from Dr. Cummings's fraudulent promise not to compete ($1,244,000). (Civ. Code § 3343, subd. (a).) These compensatory damages totaled $1,598,300. However, because OMCOA's cross-complaint sought only $1 million in compensatory damages on the fraud cause of action, OMCOA's judgment on default was limited to $1 million.

The trial court also awarded OMCOA $1 million in punitive damages on the fraud cause of action. This amount is not unreasonable in light of the

---

[8]This is not meant to imply punitive damages resulting from fraudulent conduct are *limited* to the profit defendant obtained through its misconduct. We only hold punitive damages calculated on the basis of the profitability of the defendant's fraudulent conduct satisfy the requirement the trier of fact consider the financial condition of the particular defendant. (See *Neal, supra*, 21 Cal.3d at p. 928.)

reprehensibility of Cummings's conduct and the amount of compensatory damages proven (approximately $1.6 million). However, because the only evidence of Cummings's financial condition was the profitability of the fraudulent conduct and $1 million of that profit was recovered by OMCOA through compensatory damages, the punitive damage award must be reduced to $598,300, which represents the remaining illegal profit obtained by Cummings.

## DISPOSITION

The judgment is modified to reduce the punitive damages to $598,300. In all other respects the judgment is affirmed. Respondents are awarded their costs on appeal.

Lillie, P. J., and Woods (Fred), J., concurred.

A petition for a rehearing was denied December 7, 1992, and appellants' petition for review by the Supreme Court was denied January 28, 1993.