KITCHING, J.,
Concurring and Dissenting. — I concur with my colleagues on all issues except the affirmance of the $18 million punitive damages award. On this issue, I respectfully dissent.
After determining “the jury clearly should have reached a different verdict or decision as to compensatory damages,” and reducing the award by 80 percent — from $30 million to $6 million — the trial court declined to disturb the jury’s $18 million punitive damages award, concluding a “3:1 ratio of punitive to compensatory damages is reasonable.” In my view, the significant reduction of the jury’s compensatory damages award requires a new trial on the amount of punitive damages.
“Although a trial court’s approval of the punitive damage award (by denial of a motion for new trial) is entitled to significant weight [citation], deference is not abdication. It is the duty and responsibility of an appellate court to intervene where the award is so grossly disproportionate or palpably excessive as to raise a presumption that it was the product of passion and prejudice.” (Dumas v. Stocker (1989) 213 Cal.App.3d 1262, 1266 [262 Cal.Rptr. 311]; see Neal v. Farmers Ins. Exchange (1978) 21 Cal.3d 910, 928 [148 Cal.Rptr. 389, 582 P.2d 980] (Neal) [“[A]n appellate court may reverse [a punitive damages] award ‘only “ ‘[w]hen the award as a matter of law appears excessive, or where the recovery is so grossly disproportionate as to raise a presumption that it is the result of passion or prejudice.’ ” ’ ”].) “Appellate courts must scrutinize punitive damage verdicts because they *990 ‘constitute a windfall, create the anomaly of excessive compensation, and are therefore not favored in the law.’ ” (Las Palmas Associates v. Las Palmas Center Associates (1991) 235 Cal.App.3d 1220, 1258 [1 Cal.Rptr.2d 301].)
“ ‘[E]xemplary damages must bear a reasonable relation to actual damages’ [citation] even though no fixed ratio exists to determine the proper proportion ____” (Liodas v. Sahadi (1977) 19 Cal.3d 278, 284 [137 Cal.Rptr. 635, 562 P.2d 316] (Liodas).) In assessing whether a recovery is “ ‘grossly disproportionate, ’ ” a “relevant yardstick is the amount of compensatory damages awarded; in general, even an act of considerable reprehensibility will not be seen to justify a proportionally high amount of punitive damages if the actual harm suffered thereby is small.” (Neal, supra, 21 Cal.3d at p. 928.) Because the calculation of punitive damages involves a fluid process that defies strict adherence to a rigid formula, the proper proportion that punitive damages should bear to compensatory damages is a question committed, in the first instance, to the jury’s determination. (Walker v. Signal Companies, Inc. (1978) 84 Cal.App.3d 982, 998 [149 Cal.Rptr. 119]; Gagnon v. Continental Casualty Co. (1989) 211 Cal.App.3d 1598, 1602 [260 Cal.Rptr. 305] (Gagnon).) In view of these complementary principles, when a substantial reduction in compensatory damages makes the proportionality of the jury’s punitive award “suspect,” appellate courts have held that the cause should be remanded for a new trial on the amount of punitive damages. (Auerbach v. Great Western Bank (1999) 74 Cal.App.4th 1172, 1190 [88 Cal.Rptr.2d 718] (Auerbach); see Liodas, at p. 284 [holding, when a trial court has “granted a new trial on the issue of compensatory damages” “[e]xemplary damages must be redetermined as well,” because “ ‘exemplary damages must bear a reasonable relation to actual damages’ ”].)
In Frommoethelydo v. Fire Ins. Exchange (1986) 42 Cal.3d 208 [228 Cal.Rptr. 160, 721 P.2d 41], our Supreme Court reversed a $1.25 million punitive damages award and held a new trial was required after reducing the compensatory damages award from $265,271 to $8,771. (Id. at pp. 211, 220.) The court explained that “[t]he award of punitive damages may not be upheld since most of the compensatory damages must be set aside.” (Id. at p. 220.) Similarly, in Auerbach, the court remanded a $2.6 million punitive damages award after compensatory damages were reduced from $207,155 to $6,750. (Auerbach, supra, 74 Cal.App.4th at p. 1190.) Recognizing that “punitive damages must be proportional to recoverable compensatory damages,” the Auerbach court concluded the substantial reduction in compensatory damages made the punitive damages award “suspect,” because it indicated “the jury was misled about the amount of compensatory damages it could award.” (Ibid. [“Because the punitive damages are out of proportion to the actual damages suffered by the Auerbachs, the punitive damage claim will have to be retried.”].)
*991 At the outset, I note two issues that militate against applying the customary degree of deference to the trial court’s decision in this case. First is the fact that the court used the incorrect compensatory damages figure in determining a “3:1 ratio of punitive to compensatory damages is reasonable.” As both parties agree, the court should have compared the punitive damages award to Union Carbide’s 65 percent share of the compensatory damages ($3.9 million), which yields a ratio of 4.62 to one. Second, in ruling on Union Carbide’s new trial motion, the trial court was exclusively concerned with whether its reduction of the compensatory damages required it to make a corresponding reduction in punitive damages to preserve the jury’s original ratio. In addressing this issue, the trial court correctly followed the rule stated in McGee v. Tucoemas Federal Credit Union (2007) 153 Cal.App.4th 1351 [63 Cal.Rptr.3d 1281] — that “a reduction in compensatory damages does not mandate a corresponding reduction in punitive damages,” as “[t]here is no requirement that the original ratio between compensatory and punitive damages as measured by the jury remain.” (Id. at p. 1362.) However, by narrowly focusing on this issue, the trial court failed to consider whether its decision to reduce the jury’s compensatory damages award by $24 million made the same jury’s $18 million punitive damages award “suspect,” and thereby subject to a new trial. (Auerbach, supra, 74 Cal.App.4th at p. 1190.)
In my view, the trial court’s 80 percent reduction of the compensatory damages presents two possibilities with respect to the propriety of the jury’s punitive damages award. One is that the jury acted with passion or prejudice, both in awarding $24 million more in compensatory damages than was supported by the evidence, and also in awarding punitive damages almost five times greater than the remitted amount of compensatory damages apportioned to Union Carbide. The other is that the jury followed the court’s instruction and, in awarding punitive damages roughly equivalent to the amount of compensatory damages apportioned to Union Carbide, chose a number bearing a “reasonable relationship” to the harm the jury believed plaintiffs suffered as a result of Union Carbide’s misconduct.[1] If the first scenario is the case, Union Carbide was plainly entitled to a new trial. However, even if the second scenario is accurate, this still makes the punitive damages award “suspect,” because, as the trial court found here, the “jury was misled about the amount of compensatory damages it could award.” (Auerbach, supra, 74 Cal.App.4th at p. 1190.) In either event, given the trial court’s significant reduction of the compensatory damages award, and the jury’s crucial role in *992 determining, without passion or prejudice, the “proper proportion punitive damages should bear to the injury suffered” (Gagnon, supra, 211 Cal.App.3d at p. 1602), I conclude punitive damages should be retried.
Appellant’s petition for review by the Supreme Court was denied February 18, 2015, S223511.

 The jury’s original verdict apportioned 65 percent of the $30 million compensatory damages award to Union Carbide, or $19.5 million — slightly more than the $18 million punitive damages award.