[No. A065995. First Dist., Div. Three. Oct. 11, 1996.]

RAYMOND STEVENS, as Executor, etc., Plaintiff and Respondent, v. OWENS-CORNING FIBERGLAS CORPORATION, Defendant and Appellant.

1648

COUNSEL

Gibson, Dunn & Crutcher, Thomas G. Hungar and Mark Snyderman for Defendant and Appellant.

Harry F. Wartnick, Madelyn J. Chaber and Daniel U. Smith for Plaintiff and Respondent.

OPINION

**PARRILLI, J.**—In this case appellant objects to an award of punitive damages, claiming punitive damages awarded in other cases have already fulfilled the objectives of punishment and deterrence. We hold that before such a claim may be raised on appeal, the appellant must first present evidence of the other awards to the trier of fact.

Owens-Corning Fiberglas Corporation (OCF) appeals from a judgment awarding the estate of James Duffy $25,660.17 in economic damages and $2 million in punitive damages. The jury found James Duffy's lung cancer was caused by asbestos in insulation made by OCF. OCF contends Code of Civil Procedure section 377.34[1] prohibited the jury from awarding lost pension benefits as economic damages. Regarding punitive damages, OCF argues (1) the trial court did not adequately review the amount of the award; (2) the award is excessive as a matter of law; and (3) due process and California law preclude this and any further punitive damage awards in asbestos personal injury cases.

We affirm the judgment. Any error in the award of lost pension benefits was invited by OCF. OCF's challenges to the punitive damage award are not supported by the law or the record.

FACTS

James Duffy sued a number of defendants alleging they manufactured, distributed, or marketed asbestos products that caused his asbestosis and cancer. OCF was the only defendant at trial; all others settled with Duffy or were dismissed. OCF moved *in limine* to strike Duffy's demand for punitive damages. It contended prior punitive and compensatory damages awarded against it had fulfilled the purposes of punitive damages and precluded any further awards as a matter of law. The trial court denied the motion.

During jury selection, Duffy died and his estate was substituted as plaintiff. (See § 377.31.) The jury was impaneled on December 9, 1993. OCF's

---

[1]Further statutory references are to the Code of Civil Procedure, unless otherwise specified.

liability for economic damages was tried first. On January 3, 1994, OCF submitted proposed jury instructions, including instructions on Duffy's probable life expectancy (BAJI No. 14.69) and the present cash value of his future economic losses (BAJI No. 14.70). On January 7, the parties stipulated to a jury instruction on damages for lost pension payments. This instruction told the jury that if it found exposure to OCF's asbestos product caused Duffy's lung cancer, it must assess damages for lost pension funds according to what it determined Duffy's life expectancy would have been but for the cancer. The instruction informed the jury the parties had stipulated that the present cash value of Duffy's future pension benefits was as shown in an exhibit placed in evidence by the estate. The jury was given the stipulated instruction as well as BAJI Nos. 14.69 (life expectancy) and 14.70 (present cash value, modified to reflect the parties' stipulation on the present cash value of Duffy's future pension benefits).

On January 12, the jury returned a special verdict finding OCF liable for $12,473 in medical damages and $66,612 in lost pension benefits. The jury found no comparative negligence on Duffy's part. OCF's liability for punitive damages was tried next. On January 26, the jury returned a special verdict finding OCF guilty of malice, fraud, or oppression in its manufacture and distribution of asbestos products. The amount of punitive damages, if any, was tried last. OCF did not present evidence of the punitive damages awarded against it in other cases, which it had cited to the trial court on its motion *in limine*. The jury assessed punitive damages of $2 million on January 28. The trial court reduced the compensatory damage award to $25,660.17 to account for settlements with other defendants, and entered judgment.

OCF moved for a new trial, or for a reduction in the punitive damage award. Alternatively, it moved for judgment notwithstanding the verdict. It contended the award of lost pension benefits was precluded by section 377.34, which restricts damages in survival actions to "the loss or damage that the decedent sustained or incurred before death." OCF also claimed the punitive damage award was excessive, insisting it had been punished enough in asbestos litigation and further awards were unwarranted. OCF referred the trial court to the other punitive damage awards it had raised on its motion *in limine*. The estate argued the punitive damage award was not excessive, and the recovery of lost pension benefits was not barred by section 377.34. It maintained the statute precludes recovery for lost future earnings, which did not include Duffy's vested and matured entitlement to pension benefits. The trial court denied the motions.

## DISCUSSION

### 1. *OCF Invited Any Error in the Award of Lost Pension Benefits*

██ OCF argues section 377.34 prohibits recovery of Duffy's lost pension benefits. However, OCF submitted jury instructions on Duffy's life expectancy and the present cash value of his future economic loss, and stipulated to an instruction *requiring* the jury to assess damages for lost pension benefits if it found OCF liable for causing Duffy's lung cancer. Therefore, it is in no position to complain that such damages are precluded by section 377.34.

The doctrine of invited error bars an appellant from attacking a verdict that resulted from a jury instruction given at the appellant's request. (*Nevis v. Pacific Gas & Electric Co.* (1954) 43 Cal.2d 626, 630 [275 P.2d 761] [finding of negligence induced by erroneous instruction on minimum clearance for defendant's power lines]; *Jentick v. Pacific Gas & Elec. Co.* (1941) 18 Cal.2d 117, 121 [114 P.2d 343] [verdict resulting from erroneous instruction on employer's liability for employee's negligence]; *Cucamonga County Water Dist.* v. *Southwest Water Co.* (1971) 22 Cal.App.3d 245, 261 [99 Cal.Rptr. 557] [item of damages specified in instruction tendered by appellant]; see also *Myers Building Industries, Ltd.* v. *Interface Technology, Inc.* (1993) 13 Cal.App.4th 949, 960, fn. 8 [17 Cal.Rptr.2d 242] [erroneous special verdict form]; *Mesecher* v. *County of San Diego* (1992) 9 Cal.App.4th 1677, 1685-1687 [12 Cal.Rptr.2d 279] [jointly drafted special verdict form inviting inconsistent verdict]. On application of the doctrine to bar claims of instructional error, see *Fortman* v. *Hemco, Inc.* (1989) 211 Cal.App.3d 241, 255 [259 Cal.Rptr. 311] [BAJI instructions]; *Stone* v. *Foster* (1980) 106 Cal.App.3d 334, 350 [164 Cal.Rptr. 901] [instruction on future medical expenses as element of damages]; *Gherman* v. *Colburn* (1977) 72 Cal.App.3d 544, 567 [140 Cal.Rptr. 330] [jointly requested instruction].)

██ The invited error doctrine applies "with particular force in the area of jury instructions. Whereas in criminal cases a court has strong sua sponte duties to instruct the jury on a wide variety of subjects, a court in a civil case has no parallel responsibilities. A civil litigant must propose complete instructions in accordance with his or her theory of the litigation and a trial court is not 'obligated to seek out theories [a party] might have advanced, or to articulate for him that which he has left unspoken.' [Citations.]" *Mesecher* v. *County of San Diego, supra,* 9 Cal.App.4th at p. 1686.)

██ OCF contends it has not waived the right to challenge the award because it raised the issue in its motions for a new trial or judgment

notwithstanding the verdict. It claims legal challenges may be presented for the first time by way of posttrial motion and will be treated as if raised before the verdict, citing *Hoffman-Haag* v. *Transamerica Ins. Co.* (1991) 1 Cal.App.4th 10, 15 [1 Cal.Rptr.2d 805]. Nothing in *Hoffman-Haag* supports the statement that legal arguments first asserted after trial are treated as if raised before the verdict; the court held only that posttrial challenges in the trial court based on legal error in the judgment are not limited to those raised before the verdict or judgment. Nor did *Hoffman-Haag* involve invited instructional error. There, after a court trial, the defendant moved for a new trial and to vacate the judgment, relying for the first time on a statute effectively overruling case law upon which the trial court had based its decision. The Court of Appeal held it was permissible for the defendant to rely on the statute in its posttrial motion, and affirmed the trial court's order granting the motion. A theory presenting a question of law on undisputed facts may be raised for the first time on appeal, and a trial court has no less power to consider new legal theories on a motion for new trial when it reexamines its initial determination for legal error. (*Id.* at pp. 15-16.)

OCF suggests we may consider the effect of section 377.34 as a purely legal issue involving no disputed facts. We have broad discretion to decide whether to consider a tardily raised legal issue. We are more inclined to do so when matters of important public interest or public policy are involved. (*Resolution Trust Corp.* v. *Winslow* (1992) 9 Cal.App.4th 1799, 1810 [12 Cal.Rptr.2d 510] [considering effect of federal case law implementing important federal public policy relating to federally insured financial institutions].) If the matter is important enough, we may consider it even though the appellant adopted an inconsistent position in the trial court. (See *In re Marriage of Moschetta* (1994) 25 Cal.App.4th 1218, 1227-1228 [30 Cal.Rptr.2d 893] [considering enforceability of surrogacy contract due to "intense public and legal concern" over issue, despite appellant's concession at trial that contract was unenforceable].)

We decline to exercise our discretion to consider whether section 377.34 bars the estate's recovery of lost pension benefits. Although OCF's argument is consistent with the plain language of section 377.34, the statute's impact on recovery of future pension benefits appears to be an issue of first impression.[2] However, we perceive no pressing public interest or policy in favor of reaching the issue, as existed in the *Resolution Trust Corp.* and *Moschetta* cases. Judicial policy disfavors reaching the issue; the invited

---

[2]In *Williamson* v. *Plant Insulation Co.* (1994) 23 Cal.App.4th 1406, 1418, footnote 5 [28 Cal.Rptr.2d 751], we left open the question of whether lost future earning capacity may be considered an element of economic damages incurred during a deceased plaintiff's lifetime.

error doctrine prevents OCF from challenging the verdict the jury reached by following instructions OCF submitted. This would be so even if OCF's position had been adopted by a definitive, retroactive appellate decision rendered after the verdict. (*Henderson* v. *Harnischfeger Corp.* (1974) 12 Cal.3d 663, 670 [117 Cal.Rptr. 1, 527 P.2d 353]; *Correll* v. *Clark Equipment Co.* (1978) 76 Cal.App.3d 548, 553 [143 Cal.Rptr. 269].) We conclude OCF can claim no prejudice regardless of any error in the trial court's ruling on the merits of OCF's section 377.34 argument.

OCF notes the estate responded to OCF's posttrial motions on the merits, without arguing that OCF had consented to the jury's consideration of lost pension benefits. Therefore, OCF contends, the estate cannot assert on appeal that OCF waived the section 377.34 issue. However, it "is an elementary principle of appellate law" that courts will not review invited instructional error. (*Fortman* v. *Hemco, Inc.*, *supra*, 211 Cal.App.3d at p. 255.) This doctrine does not depend on the error having been raised in posttrial proceedings below.

2. *Trial Court Review of the Punitive Damage Award Satisfied Due Process*

■ OCF claims its right to procedural due process was violated. It asserts the trial court did not meaningfully review the punitive damage award on OCF's motions for a new trial, a reduction in punitive damages, or judgment notwithstanding the verdict. The only basis OCF specifies for this claim is the trial court's failure to state reasons for upholding the award.[3] OCF claims a statement of reasons is required under *Las Palmas Associates* v. *Las Palmas Center Associates* (1991) 235 Cal.App.3d 1220, 1258 [1 Cal.Rptr.2d 301] (*Las Palmas*), *Morgan* v. *Woessner* (9th Cir. 1993) 997 F.2d 1244, 1257, and *Boyle* v. *Lorimar Productions, Inc.* (9th Cir. 1994) 13

---

[3]The estate contends OCF is collaterally estopped from asserting its various challenges to multiple punitive damage awards because those claims were rejected by the Second District last year in an unpublished opinion. (*Rekdahl* v. *Owens-Corning Fiberglas Corp.* (May 25, 1995) B068259; see California Rules of Court, rule 977(b)(1) [reliance on unpublished opinion permitted when opinion is relevant for collateral estoppel purposes].) We take judicial notice of the *Rekdahl* opinion, which discloses that the only issue decided by the Second District which is identical to an issue raised in this appeal is whether due process requires a statement of reasons by the trial court when a new trial on punitive damages is denied. (On identity of issues as a prerequisite to collateral estoppel, see *Lucido* v. *Superior Court* (1990) 51 Cal.3d 335, 341 [272 Cal.Rptr. 767, 795 P.2d 1223, 2 A.L.R.5th 995].)

While we agree with the Second District's conclusion that a statement of reasons is not constitutionally required, we nevertheless consider the merits of the issue and publish our decision, for the benefit of other litigants. (See *Verdugo Hills Hospital, Inc.* v. *Department of Health* (1979) 88 Cal.App.3d 957, 962, fn. 6 [152 Cal.Rptr. 263].)

F.3d 1357, 1361. We disagree, and conclude OCF has failed to show a deprivation of due process.

In *Pacific Mutual Life Insurance Co.* v. *Haslip* (1990) 499 U.S. 1 [113 L.Ed.2d 1, 111 S.Ct. 1032] (*Haslip*), the United States Supreme Court found no due process violation in Alabama's system of awarding and reviewing punitive damages. The *Haslip* opinion noted approvingly that in Alabama (1) the jury is instructed on the nature and purpose of punitive damages; (2) the trial court scrutinizes the award on a postverdict challenge according to various factors, and must state on the record its reasons for approving or disturbing the verdict; and (3) the Alabama Supreme Court measures the punitive damage verdict against a number of criteria to ensure it is not excessive. (*Haslip, supra*, 499 U.S. at pp. 19-22 [113 L.Ed.2d at pp. 20-22]; see *Las Palmas, supra*, 235 Cal.App.3d at pp. 1256-1257.) The *Las Palmas* court noted that in *Adams* v. *Murakami* (1991) 54 Cal.3d 105, 118, footnote 9 [284 Cal.Rptr. 318, 813 P.2d 1348], the California Supreme Court declined to consider whether the basis for reviewing punitive damage awards in our state passes constitutional scrutiny after *Haslip*. (*Las Palmas, supra*, 235 Cal.App.3d at p. 1257.)

*Las Palmas* concluded California standards of posttrial and appellate review of punitive damages provide due process. (*Las Palmas, supra*, 235 Cal.App.3d at p. 1258; accord, *Boyle* v. *Lorimar Productions, Inc., supra*, 13 F.3d at p. 1359.) Under those standards, the award will be set aside if it is deemed the result of passion or prejudice. The trial judge sits as an independent trier of fact on a motion for new trial, and may disbelieve witnesses, reweigh evidence and draw reasonable inferences contrary to those drawn by the jury. Regarding a statement of reasons for denying a new trial, the *Las Palmas* court stated: "Unlike in Alabama, California law does not mandate that the trial court state on the record why it refused to interfere with the award. However, the trial court must specify in the record its reasons for disturbing the verdict. (*Neal* v. *Farmers Ins. Exchange* [(1978)] 21 Cal.3d 910, 931 [148 Cal.Rptr. 389, 582 P.2d 980]; § 657.) Requiring a statement of reasons in the latter situation, serves the purpose of ' "encourag[ing] careful deliberation by the trial court before ruling on the new trial motion and [making] a sufficiently precise record to permit meaningful appellate review" [citation].' (*Neal, supra*, 21 Cal.3d at p. 931.) While an explanation of the trial court's decision to uphold the verdict would give an added degree of protection, we think, on the whole, California law affords defendants enough safeguards to satisfy the requirements of due process." (*Las Palmas, supra*, 235 Cal.App.3d at p. 1258, fn. 8.)

In *TXO Production Corp.* v. *Alliance Resources Corp.* (1993) 509 U.S. 443 [125 L.Ed.2d 366, 113 S.Ct. 2711] (*TXO*), the United States Supreme Court

confirmed that a statement of reasons is not constitutionally required when the trial court refuses to disturb an award of punitive damages. The court declared: "The only basis for criticizing the trial judge's review of the punitive damages award is that he did not articulate his reasons for upholding it. He did, however, give counsel an adequate hearing on TXO's postverdict motions, and during one colloquy indicated his agreement with the jury's appraisal of the egregious character of the conduct of TXO's executives. . . . While it is always helpful for trial judges to explain the basis for their rulings as thoroughly as is consistent with the efficient despatch of their duties, we certainly are not prepared to characterize the trial judge's failure to articulate the basis for his denial of the motions for judgment notwithstanding the verdict and for remittitur as a constitutional violation." (*Id.* at pp. 464-465 [125 L.Ed.2d at pp. 383-384].[4])

We agree with *Las Palmas* and *TXO* that due process does not demand a statement of reasons when the trial court allows an award of punitive damages to stand. We are not persuaded otherwise by *Morgan* v. *Woessner*, *supra*, 997 F.2d 1244, which required a statement of reasons despite the absence of such a requirement in *Haslip*. (*Id.* at pp. 1256, fn. 12, and 1257.) Nor are we swayed by the fact that in *Boyle* v. *Lorimar Productions, Inc.*, *supra*, 13 F.3d 1357, the court required a statement of reasons even though it agreed with *Las Palmas* that California's procedures are constitutionally adequate. (*Id.* at pp. 1359, 1361.)

OCF does not contend the trial court failed to adequately consider its arguments at the hearing on its posttrial motions. Indeed it cannot, for it did not make a transcript of the hearing a part of the appellate record. We presume the trial court's denial of the motions was correct; as appellant, OCF bears the burden of overcoming this presumption by showing error on an adequate record. (*Maria P.* v. *Riles* (1987) 43 Cal.3d 1281, 1295 [240 Cal.Rptr. 872, 743 P.2d 932]; *Interinsurance Exchange* v. *Collins* (1994) 30 Cal.App.4th 1445, 1448 [37 Cal.Rptr.2d 126].) OCF has not carried that burden.

---

[4]The statement from *TXO* quoted above is taken from the plurality opinion signed by Justices Stevens, Rehnquist, and Blackmun. Justice Kennedy expressly concurred with this part of the plurality opinion. (*TXO, supra*, 509 U.S. at p. 466 [125 L.Ed.2d at p. 384].) It is clear from Justice Scalia's concurring opinion, joined by Justice Thomas, that a majority of the court found no constitutional problem in the trial judge's failure to state reasons. Justice Scalia considered it sufficient that the jury in *TXO* was instructed on the purposes of punitive damages under state law, and the award was reviewed for reasonableness by the trial and appellate courts. (*Id.* at p. 470 [125 L.Ed.2d at p. 387].) He added: "The procedures approved here . . . are far less detailed and restrictive than those upheld in *Haslip*, . . . suggesting that if the Court ever does invent new procedural requirements, they will not deviate significantly from the traditional ones that ought to govern." (*Id.* at p. 471 [125 L.Ed.2d at p. 388].)

### 3. *The Punitive Damage Award Was Not Excessive*

■ OCF contends the punitive damage award was excessive. Whether to award punitive damages and how much to award were issues for the jury and for the trial court on the new trial motion. ■ All presumptions favor the correctness of the verdict and judgment. The trial court's approval of the punitive damage award by denying OCF a new trial is not binding on appeal, but we must give it significant weight. We may reverse the award as excessive only if the entire record, viewed most favorably to the judgment, indicates the award was the result of passion and prejudice. We are also guided, however, by the recognition that punitive damages are not favored in the law because they create the anomaly of excessive compensation. (*Las Palmas, supra,* 235 Cal.App.3d at p. 1258; *Dumas* v. *Stocker* (1989) 213 Cal.App.3d 1262, 1266 [262 Cal.Rptr. 311]; *Devlin* v. *Kearny Mesa AMC/ Jeep/Renault, Inc.* (1984) 155 Cal.App.3d 381, 387-388 [202 Cal.Rptr. 204].)

■ The purpose of punitive damages is a public one—to punish wrongdoing and deter future misconduct by either the defendant or other potential wrongdoers. The essential question for the jury, the trial court, and the appellate courts is whether the amount of the award substantially serves the public interest in punishment and deterrence. The California Supreme Court has established three criteria for making that determination: (1) the reprehensibility of the defendant's misdeeds; (2) the amount of compensatory damages, though there is no fixed ratio for determining whether punitive damages are reasonable in relation to actual damages; and (3) the defendant's financial condition. (*Adams* v. *Murakami, supra,* 54 Cal.3d at p. 110; *Neal* v. *Farmers Ins. Exchange, supra,* 21 Cal.3d at p. 928; *Las Palmas, supra,* 235 Cal.App.3d at p. 1258; *Devlin* v. *Kearny Mesa AMC/Jeep/Renault, Inc., supra,* 155 Cal.App.3d at p. 390.) The wealthier the wrongdoer, the larger the punitive damage award must be to meet the goals of punishment and deterrence. (*Adams* v. *Murakami, supra,* 54 Cal.3d at p. 110; *Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, 65 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878].)

■ OCF's attack on the punitive damage award is narrowly based, but broadly aimed. It does not contend its conduct was insufficiently reprehensible to justify punitive damages, or that the compensatory damages awarded the estate were disproportional to the punitive damage award, or that its overall financial condition is such that the award is excessive. Rather, OCF claims it has been punished enough in asbestos litigation by compensatory and punitive damages and litigation expenses. It asks us to rule that additional punitive damages are unnecessary and therefore unlawful in this or

any other action for personal injuries caused by asbestos exposure. OCF also contends the award in this case is improper because it exceeds the profits OCF realized on the sale of Kaylo, the asbestos insulation product to which Duffy was exposed.[5]

Because it may be dealt with briefly, we first consider the argument based on Kaylo profits. We then address the "overkill" argument. We will not consider evidence of awards in other asbestos cases that was not presented to the jury. We conclude the evidence OCF did present was insufficient to establish that the point of "overkill" has been reached. Partly because of that insufficiency, in part 4 of our opinion we reject OCF's policy arguments against imposition of punitive damages in any asbestos litigation.

### A.   The Amount of Punitive Damages Is Not Limited by Kaylo Profits

OCF presented evidence that from 1954 to 1972, the calendar years in which OCF sold or manufactured Kaylo, total sales of the product were approximately $140 million. About 1 percent of that, or $1.5 million, was realized as net profit after taxes, which was a lower margin than OCF enjoyed on its other products. Kaylo sales were about 2 percent of OCF's total sales. OCF contends the $2 million punitive damage award is excessive as a matter of law because it exceeds the profits attributable to Kaylo. OCF cites no authority to support this claim. In *Adams* v. *Murakami, supra,* 54 Cal.3d at page 116, and footnote 7, the Supreme Court held that evidence of a defendant's financial condition is required for the assessment of punitive damages, but then declined to specify any particular standard for measuring a defendant's ability to pay. However, the use of profits as a yardstick for measuring punitive damages has been discussed in two relatively recent California opinions.

In *Cummings Medical Corp.* v. *Occupational Medical Corp.* (1992) 10 Cal.App.4th 1291 [13 Cal.Rptr.2d 585], the court held that evidence of the

[5]At oral argument, OCF suggested for the first time that under the United States Supreme Court's recent opinion in *BMW of North America, Inc.* v. *Gore* (1996) __ U.S. __ [134 L.Ed.2d 809, 116 S.Ct. 1589], the award was excessive because OCF had no notice of the severity of the punitive damages that would be assessed against it in asbestos litigation. However, while OCF notified us and opposing counsel in advance of oral argument that it believed the *BMW* opinion was "pertinent," it merely referred to the arguments in its briefs without indicating any intent to raise a new argument based on notice. Therefore, we decline to consider this claim. (See *New Plumbing Contractors, Inc.* v. *Nationwide Mutual Ins. Co.* (1992) 7 Cal.App.4th 1088, 1098 [9 Cal.Rptr.2d 469].) OCF has not specified any other aspects of the *BMW* opinion that bear on this case. We note that the question of "overkill," which is OCF's primary concern here, was not at issue in the *BMW* case. (*BMW of North America, Inc.* v. *Gore, supra,* __ U.S. at p. __ [134 L.Ed.2d at pp. 836-837, 116 S.Ct. at p. 1607] (conc. opn. of Breyer, J.).)

profitability of the defendant's fraudulent conduct was sufficient to meet the requirement that the trier of fact consider the defendant's financial condition when imposing punitive damages. The court made clear, however, that punitive damages are not necessarily *limited* by the amount of the profits. (*Id.* at p. 1300.) In *Kenly* v. *Ukegawa* (1993) 16 Cal.App.4th 49 [19 Cal.Rptr.2d 771], another case involving punitive damages for fraud, the court disagreed with *Cummings.* The *Kenly* court held that a profit-based award did not sufficiently account for the defendant's liabilities, and concluded a net worth standard better reflects the defendant's ability to pay while also accounting for any profits the defendant realized.

We need not take sides in the conflict between *Cummings* and *Kenly* to dispose of OCF's profits argument. The amount of a defendant's profits does not limit a punitive damage award, as *Cummings* noted. And profits may not accurately reflect a defendant's financial condition, as *Kenly* pointed out. If it had made very high profits on Kaylo, but suffered losses on its other products, OCF would not suggest that punitive damages be based on Kaylo profits alone. *Adams* v. *Murakami, supra,* 54 Cal.3d 105, makes it abundantly clear that a fully informed determination requires evidence of the defendant's overall financial condition. (*Id.* at pp. 110-116.) Here, since Kaylo sales approximated only 2 percent of OCF's total sales, and an even smaller percentage of its total profits, Kaylo profits do not provide an accurate indication of OCF's financial condition or the likely punitive and deterrent impacts of a punitive damage award.

### B. *OCF Cannot Rely on Evidence It Failed to Present to the Jury*

■ Awarding punitive damages is first a function of the trier of fact. (*Egan* v. *Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 821 and fn. 2 [169 Cal.Rptr. 691, 620 P.2d 141], citing Rest.2d Torts, § 908, com. d; *Gagnon* v. *Continental Casualty Co.* (1989) 211 Cal.App.3d 1598, 1602 [260 Cal.Rptr. 305].) This fundamental rule is embodied in BAJI No. 14.72.2, which the trial court read to the jury in this case: "Whether punitive damages should be imposed, and if so, the amount thereof, is left to your sound discretion, exercised without passion or prejudice."

When a motion for new trial is based on the ground of excessive damages, the trial court is restricted to the evidence presented at trial. "A new trial shall not be granted . . . upon the ground of excessive or inadequate damages, unless after weighing the evidence the court is convinced from the entire record, including reasonable inferences therefrom, that the court or

jury clearly should have reached a different verdict or decision." (§ 657; see also *Frost* v. *Southern Pacific Co.* (1960) 177 Cal.App.2d 40, 42 [1 Cal.Rptr. 824] [trial court must determine whether evidence submitted to jury justified amount of damages; posttrial affidavit casting doubt on severity of plaintiff's injuries could not properly have been considered].)

An appellate court also depends on the record developed at trial when it reviews an award of punitive damages for excessiveness. "A reviewing court cannot make a fully informed determination of whether an award of punitive damages is excessive unless the record contains evidence of the defendant's financial condition." (*Adams* v. *Murakami, supra,* 54 Cal.3d at p. 110; see also *Finney* v. *Lockhart* (1950) 35 Cal.2d 161, 164-165 [217 P.2d 19] [factors determining amount of punitive damages must be presented by record; otherwise, evidence is presumed sufficient].)

Punitive damages previously imposed for the same conduct are relevant in determining the amount of punitive damages required to sufficiently punish and deter. (*Gagnon* v. *Continental Casualty Co., supra,* 211 Cal.App.3d at p. 1602; *Vossler* v. *Richards Manufacturing Co.* (1983) 143 Cal.App.3d 952, 968-969 [192 Cal.Rptr. 219], disapproved on other grounds by *Adams* v. *Murakami, supra,* 54 Cal.3d at pp. 115-116; *Grimshaw* v. *Ford Motor Co.* (1981) 119 Cal.App.3d 757, 812 [174 Cal.Rptr. 348].) The likelihood of future punitive damage awards may also be considered, although it is entitled to considerably less weight. (See *Delos* v. *Farmers Group, Inc.* (1979) 93 Cal.App.3d 642, 666-667 [155 Cal.Rptr. 843] ["inordinate reduction" of punitive damages by trial court reluctantly upheld, partly because evidence was presented of other actions involving same defendants and identical issues]; Rest.2d Torts, § 908, com. e, quoted with approval in *Vossler* v. *Richards Manufacturing Co., supra,* 143 Cal.App.3d at p. 969 [" 'It seems appropriate to take into consideration both the punitive damages that have been awarded in prior suits and those that may be granted in the future, with greater weight being given to the prior awards' "].)

We conclude that evidence of punitive damages imposed in other cases must be presented to the jury in the first instance. No California court has so held because the issue has not been squarely presented. "We recognize the fact that multiplicity of awards may present a problem, but the mere possibility of a future award in a different case is not a ground for setting aside the award in this case . . . . If Ford should be confronted with the possibility of an award in another case for the same conduct, *it may raise the issue in that case*." (*Grimshaw* v. *Ford Motor Co., supra,* 119 Cal.App.3d at p. 812,

italics added.) In *Vossler* v. *Richards Manufacturing Co., supra,* 143 Cal.App.3d 952, the court quoted the above passage from *Grimshaw,* and concluded the issue should be left "to a court in which the problem is raised by proof of other litigation." (*Id.* at pp. 968-969.)

Courts in other jurisdictions, when presented with the "overkill" argument made by OCF here, have held that evidence of other punitive damage awards must be presented to the jury before the argument is raised in a reviewing court. (*W.R. Grace & Co.-Conn.* v. *Waters* (Fla. 1994) 638 So.2d 502, 506; *In re Seventh Jud. Dist. Asbestos Lit.* (1993) 190 A.D.2d 1068 [593 N.Y.S.2d 685, 686]; *Kochan* v. *Owens-Corning Fiberglas Corp.* (1993) 242 Ill.App.3d 781 [610 N.E.2d 683, 694-695]; *State* ex rel. *Young* v. *Crookham* (1980) 290 Or. 61 [618 P.2d 1268, 1273-1274, 11 A.L.R.4th 1251]; *Campbell* v. *ACandS, Inc.* (D.Mont. 1989) 704 F.Supp. 1020, 1023; see also *Ripa* v. *Owens-Corning Fiberglas* (N.J. Super. Ct. App. Div. 1995) 660 A.2d 521, 535, fn. 9 [suggesting, without deciding, that defendant should be *required* to inform jury of prior awards and pending claims]; *Davis* v. *Celotex Corp.* (1992) 187 W.Va. 566 [420 S.E.2d 557, 564-566] [declining to consider "overkill" argument in absence of "developed factual record"].) Other courts, while not specifically requiring presentation to the jury in the first instance, have suggested the jury may be given evidence of other punitive damage awards for the purpose of mitigating the award under deliberation. (*Dunn* v. *HOVIC* (3d Cir. 1993) 1 F.3d 1371, 1384; *Jackson* v. *Johns-Manville Sales Corp.* (5th Cir. 1986) 781 F.2d 394, 407; *Fischer* v. *Johns-Manville Corp.* (1986) 103 N.J. 643 [512 A.2d 466, 480]; *Palmer* v. *A.H. Robins Co., Inc.* (Colo. 1984) 684 P.2d 187, 215-216; *Puppe by Puppe* v. *A.C. & S., Inc.* (D.N.D 1990) 733 F.Supp. 1355, 1362]; *In re "Agent Orange" Product Liability Litigation* (1983) 100 F.R.D. 718, 728.)

OCF argues it should not be required to give the jury "highly inflammatory evidence" of other punitive damage awards. However, the prejudice inherent in such evidence relates more to liability for punitive damages than to the amount of the award. Under Civil Code section 3295, subdivision (d), the defendant may require these issues to be tried separately, as they were in this case. Thus, the jury can determine liability for punitive damages without considering other juries' views on the reprehensibility of the defendant's conduct. If the jury finds that punitive damages are warranted, evidence of other awards that is presented at the amount phase of trial should tend to reduce the amount assessed, particularly where, as here, the defendant no

longer engages in the conduct at issue.[6] BAJI No. 14.72.2 requires the jury to consider "[t]he amount of punitive damages which will have a deterrent effect on the defendant in the light of [the] defendant's financial condition." We believe juries are capable of properly evaluating the impact of other awards against the defendant when weighing the deterrent effect of a punitive damage award. An appropriate instruction can be given to ensure that the evidence of other awards is not used to increase punitive damages, but only to decrease them if the jury concludes the level of deterrence and punishment already imposed justifies a lesser award, or no award at all.[7]

OCF contends we may take judicial notice of cases not considered in the trial court, citing *Devlin* v. *Kearny Mesa AMC/Jeep/Renault, Inc.*, *supra*, 155 Cal.App.3d at pages 393-396. In *Devlin*, however, the court did not examine other cases involving the same defendant to determine whether the ends of punishment and deterrence had been sufficiently achieved. Rather, the court conducted a general survey "in an effort to determine whether we could discern from the cases a single formula for calculating punitive damages." (*Id.* at p. 388.) After reviewing the compensatory and punitive damages awarded, the relationship between the punitive damages and the defendants' wealth, the rulings on motion for new trial and appeal, and the final ratios between punitive damages and wealth, and between punitive and compensatory damages (*id.* at pp. 393-396), the *Devlin* court "discovered what everyone probably already knows: the formula does not exist. And, we have concluded, that is properly so." (*Id.* at p. 388.) The court proceeded to "examine the usual factors recited by appellate courts when reviewing punitive damages awards" (*ibid.*), reiterating that ". . . the calculation of punitive damages does not involve strict adherence to a rigid formula. It involves, instead, 'a fluid process of adding or subtracting depending on the nature of the acts and *the effect on the parties and the worth of the defendants. Juries within this framework have a wide discretion in determining what is*

---

[6]Other jurisdictions have recognized the protection that bifurcated proceedings afford defendants in this situation. (*W.R. Grace & Co.-Conn.* v. *Waters*, *supra*, 638 So.2d at p. 506; *Jackson* v. *Johns-Manville Sales Corp.*, *supra*, 781 F.2d at p. 407, fn. 16; *Palmer* v. *A.H. Robins Co., Inc.*, *supra*, 684 P.2d at p. 215. See also *In re Seventh Jud. Dist. Asbestos Lit.*, *supra*, 593 N.Y.S.2d at p. 686, and *Ripa* v. *Owens-Corning Fiberglas*, *supra*, 660 A.2d at p. 535, noting that evidence of other awards is properly presented at the amount phase, without discussing prejudice.)

[7]A proper instruction might read: "If you determine that a defendant has already been assessed with punitive damages based on the same conduct for which punitive damages are requested in this case, you may consider whether punitive damages awarded in other cases have sufficiently punished and made an example of the defendant. You must not use the amount of punitive damages awarded in other cases to determine the amount of the punitive damage award in this case, except to the extent you determine that a lesser award, or no award at all, is justified in light of the penalties already imposed."

*proper.* [Citation.]' " (*Id.* at p. 390, quoting *Walker* v. *Signal Companies, Inc.* (1978) 84 Cal.App.3d 982, 998 [149 Cal.Rptr. 119], italics added; see also *Gagnon* v. *Continental Casualty Co., supra,* 211 Cal.App.3d at p. 1604.) The reasoning in *Devlin* supports the conclusion the jury should be given all the evidence pertaining to the amount of a punitive damage award.

Even if we took judicial notice of the cases cited to us by OCF, we would not have enough information to gauge the actual impact of the awards in those cases because we have no evidence that OCF has paid the awards. The notations OCF adds to its string of cites indicate that many of the awards are the subject of pending appeals, and others have been resolved by settlement. We have no way of knowing the extent to which insurance has indemnified OCF for its liabilities in other cases.[8] Another crucial consideration is whether the awards in the other cases arose from the same conduct for which OCF was punished in this case. (*Simpson* v. *Pittsburgh Corning Corp.* (2d Cir. 1990) 901 F.2d 277, 281.) For evidence of other awards to have probative value, it must be tested in an adversary setting, giving the plaintiff a chance to probe the underlying facts. (See *Kochan* v. *Owens-Corning Fiberglas Corp., supra,* 610 N.E.2d at p. 694 ["plaintiffs cannot cross-examine an affidavit"]; *Racich* v. *Celotex Corp.* (2d Cir. 1989) 887 F.2d 393, 398] [failure to raise multiple punitive damage awards in trial court cannot be cured by judicial notice].)

In *W.R. Grace & Co.-Conn.* v. *Waters, supra,* 638 So.2d at page 506, the Florida Supreme Court observed that a defendant builds a record for review on the issue of repetitive punitive damage awards when it presents evidence of other awards to the jury. A New York court made the same point, in terms quite similar to those of our Supreme Court when it insisted that evidence of the defendant's financial condition must be placed on the record to ensure adequate appellate review of the amount of a punitive damage award (*Adams* v. *Murakami, supra,* 54 Cal.3d at p. 110). "Until relevant facts are established in the record, the court cannot adequately review whether a particular award of punitive damages violates New York's common-law principle that such awards be kept 'within reasonable bounds considering the purpose to be achieved as well as the *mala fides* of the defendant in the particular case' [citations] or whether the aggregate amount of awards of punitive damages has exceeded the limits of due process [citations]." (*In re Seventh Jud. Dist. Asbestos Lit., supra,* 593 N.Y.S.2d at p. 686.)

---

[8]Insurance will not indemnify a defendant for punitive damages in California, but the same is not true in all jurisdictions. (*Stonewall Surplus Lines Ins. Co.* v. *Johnson Controls, Inc.* (1993) 14 Cal.App.4th 637, 642, 643 [17 Cal.Rptr.2d 713]; *City Products Corp.* v. *Globe Indemnity Co.* (1979) 88 Cal.App.3d 31, 39-42 [151 Cal.Rptr. 494]; 6 Witkin, Summary of Cal. Law (9th ed. 1990) Torts, § 1330, p. 787.)

OCF points out that in *Las Palmas, supra,* 235 Cal.App.3d 1220, the court noted California's standards for review of punitive damage awards afford a defendant the opportunity to raise the existence of other awards against it to attack the jury's punitive damage verdict. (*Id.* at pp. 1258-1259, fn. 9.) The *Las Palmas* court made this general observation while comparing California procedure to the Alabama law reviewed in *Haslip.* As noted in *Adams* v. *Murakami, supra,* 54 Cal.3d 105, Alabama law differs from California's in that Alabama juries are not allowed to consider the financial position of the defendant when assessing punitive damages; such evidence may be considered only on postverdict review by the trial and appellate courts. (*Id.* at pp. 117-118, fn. 8.) The *Las Palmas* court concluded California law affords "the same general degree of scrutiny as found in the Alabama review process" (*Las Palmas, supra,* 235 Cal.App.3d at p. 1258), but it was not called upon to consider the "overkill" argument raised by OCF here. The proposition we establish now was not at issue in *Las Palmas*: If a defendant wishes to attack a punitive damage award on the ground that other such awards have already sufficiently punished it for the same conduct, evidence of the other awards must be presented to the jury.

We are not the first appellate court to make this point to OCF. Before trial began in this case, an Illinois appellate court held that evidence of other awards could not be considered on appeal when OCF had not presented it to the jury. (*Kochan* v. *Owens-Corning Fiberglas Corp., supra,* 610 N.E.2d at pp. 694-695.) OCF also knew that in *Dunn* v. *HOVIC, supra,* 1 F.3d at page 1384, the court stated: "OCF made the strategic decision not to introduce into evidence before the jury information concerning other punitive damages awards assessed against it. Had it done so, the jury might have made a smaller award. We thus conclude that OCF has failed to prove that the jury's verdict, admittedly quite large, reflected such passion and prejudice as to mandate a new trial." Presumably, OCF was aware of the other pre-1994 authority we have noted, which requires or suggests that evidence of other awards be presented to the jury. Hence, it appears OCF deliberately withheld this evidence, reserving it for attacks on the award of punitive damages on motion for new trial and on appeal. This strategy improperly curtails the jury's factfinding prerogative.

Our decision does not give the plaintiff the right to introduce evidence of other punitive damage awards. While the plaintiff bears the burden of producing evidence of the defendant's financial condition (*Adams* v. *Murakami, supra,* 54 Cal.3d at p. 123), other punitive damage awards are not such an integral part of a defendant's financial condition that they must be specified by the plaintiff. The defendant's net worth, or other measures of its

overall financial position, may be established without identifying losses attributable to punitive damages. However, such losses are directly relevant to whether the defendant has been sufficiently punished for the conduct at issue. Therefore, once the plaintiff has introduced evidence of the defendant's financial condition, it is for the defendant to decide whether to introduce evidence of other punitive damage awards in mitigation. (See *W.R. Grace & Co.-Conn.* v. *Waters, supra,* 638 So.2d at p. 506.)

### C. *Evidence Before the Jury Did Not Establish "Overkill"*

■ OCF contends the evidence it did present to the jury demonstrated such a heavy financial burden on OCF in asbestos litigation that any additional punitive damage award was unwarranted. We disagree.

OCF's Third Quarter 1993 Form 10-Q, filed with the Securities and Exchange Commission (SEC), was the most current evidence of its financial condition presented to the jury.[9] It showed that as of September 30, 1993, approximately 94,000 asbestos personal injury claims were pending against OCF. Approximately 116,400 such claims had been resolved by settlement or otherwise; another 15,600 cases had been settled in principle. During 1990, 1991, and 1992, OCF had resolved approximately 54,800 claims at an average cost of less than $10,000. OCF expected the average payment for the cases currently settled in principle to be somewhat higher. It noted its indemnity payments had varied considerably over time and from case to case due to a number of factors including claimants' different illnesses and exposures, the number and resources of codefendants, the jurisdiction of suits and availability of defenses, and the type of settlement. OCF estimated incurring $50 to $60 million in defense costs during 1993.

OCF concedes most of its pre-1993 liability was covered by insurance.[10] Its 10-Q form stated that as of September 30, 1993, OCF had approximately $431 million in unexhausted products hazard coverage. $144 million of this coverage would not be available until 1996, and another $71 million was subject to coverage litigation or alternative dispute resolution. Additionally, OCF estimated it would be able to recover approximately $300 million in nonproducts coverage under its liability insurance policies, although this coverage was subject to ongoing arbitration.

---

[9]OCF also introduced the deposition of Peter Frank, an accounting expert, which was taken on May 1, 1993, in connection with another asbestos case. Mr. Frank's testimony was based, in part, on earlier SEC filings.

[10]In his deposition, Mr. Frank stated he had no precise information on how much of OCF's payments to asbestos plaintiffs had been covered by insurance, but "the indications are that the vast majority of the more than one billion dollars has to date been covered by insurance."

OCF's 10-Q form disclosed a $940 million reserve, the product of a charge against earnings which the company intended to use for uninsured indemnity and defense costs associated with asbestos personal injury claims through the year 1999. (OCF was unable to estimate the cost of claims received after 1999.) OCF noted a recent increase in claim filing rates, and substantial uncertainty over the actionability of claims by unimpaired persons who had been exposed to asbestos. Depending especially on the future treatment of such "unimpaired claims," OCF recognized the reserve might have to be increased, but it was confident the reserve was sufficient to provide for the uninsured costs of claims by significantly impaired persons. Nevertheless, it cautioned there was considerable uncertainty in its estimates, and actual costs could be higher or lower than expected. Management's conclusion was that "additional uninsured and unreserved costs which may arise out of pending personal injury and property damage asbestos claims and additional similar asbestos claims filed in the future will not have a materially adverse effect on the Company's financial position."

In closing argument, OCF referred to the information in its 10-Q form and contended it showed the goals of punishment and deterrence had already been met, so that punitive damages were unnecessary. The jury was not convinced. Viewing the record most favorably in support of the verdict, as we must, we cannot say the jury's conclusion was the result of passion or prejudice. OCF's argument was primarily based not on its actual out-of-pocket losses, which were relatively small according to the 10-Q form, but on its anticipated expenses. OCF admitted that very few claims went to trial, so the jury could reasonably conclude that punitive damages would be imposed in a small number of cases. To the extent OCF was indemnified by insurance for damages assessed against it, it cannot be said that the punitive and deterrent functions of punitive damages have been served. (See *Stonewall Surplus Lines Ins. Co.* v. *Johnson Controls, Inc.*, *supra*, 14 Cal.App.4th at pp. 642-643.) The evidence showed OCF had substantial remaining insurance coverage and a large reserve set aside for claims like the one before the jury. OCF did not anticipate such claims having an adverse effect on its financial condition in the foreseeable future. Without any showing of punitive damages actually assessed and paid, the evidence fell far short of demonstrating "overkill."

D. *A Reduction in the Punitive Damage Award Is Not Warranted*

As an alternative to reversing the punitive damage award, OCF asks us to order a substantial remittitur. The only argument or authority OCF advances in support of this request is that we should follow the approach of

the Third Circuit in *Dunn* v. *HOVIC, supra,* 1 F.3d 1371. The *Dunn* court concluded OCF had failed to show the jury's verdict reflected such passion and prejudice as to require a new trial, and had also failed to establish any due process violation. (*Id.* at pp. 1384, 1391.) Nevertheless, the court decided the trial judge, who had reduced a $25 million punitive damage verdict to $2 million, "gave insufficient consideration to the effect of successive punitive awards in asbestos litigation." The court ordered a remittitur of punitive damages in excess of $1 million. (*Id.* at p. 1391.)

We have declared our unwillingness to consider evidence of other punitive damage awards that was not presented to the jury. The approach taken by the *Dunn* court encourages defendants to withhold such evidence from the jury, then use it on appeal to attack the punitive damage award. Without any disrespect to the Third Circuit, we do not condone this strategy and will not reward it by ordering a remittitur. OCF does not argue a remittitur is justified under the established California criteria for determining whether punitive damages are excessive—the reprehensibility of OCF's conduct, the amount of compensatory damages,[11] and the defendant's overall financial condition. (*Adams* v. *Murakami, supra,* 54 Cal.3d at p. 110; *Neal* v. *Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 928 [148 Cal.Rptr. 389, 582 P.2d 980].)

### 4. *OCF's Arguments Against Punitive Damages as a Matter of Law Are Unconvincing*

OCF raises a number of arguments to the effect that punitive damages are precluded as a matter of law in asbestos litigation. While we agree there is a danger of "overkill" by repeated awards of punitive damages in asbestos cases, we believe that danger must be established by an adequate record before an appellate court can do something about it. OCF's legal arguments are not supported by such a record, and do not persuade us to ban punitive damages in asbestos litigation as a matter of law. OCF contends such a ban is supported by two California cases, which bar punitive damages in other contexts. We conclude the rules established in those cases do not apply to asbestos litigation.

---

[11]OCF does not argue on appeal, as it did on its motion for a new trial, that the punitive damage award should be reduced by the same proportion in which the trial court reduced the compensatory damage award to account for settlements with other defendants. Since OCF does not raise this argument, we will not consider it further except to note there is no rule requiring preservation of the original ratio between punitive damages and compensatory damages. (*Betts* v. *Allstate Ins. Co.* (1984) 154 Cal.App.3d 688, 712-713 [201 Cal.Rptr. 528]; see also *Wyatt* v. *Union Mortgage Co.* (1979) 24 Cal.3d 773, 781-782 and 790-791 [157 Cal.Rptr. 392, 598 P.2d 45].)

## A. *The Market Share Rule*

The market share rule permits a consumer harmed by fungible goods that cannot be traced to a specific manufacturer to recover from various manufacturers in proportion to the share each had of the appropriate market, unless any defendant can prove it could not have made the product causing the plaintiff's injuries. (*Sindell* v. *Abbott Laboratories* (1980) 26 Cal.3d 588, 612 [163 Cal.Rptr. 132, 607 P.2d 924, 2 A.L.R.4th 1061].) In *Magallanes* v. *Superior Court* (1985) 167 Cal.App.3d 878, 889-890 [213 Cal.Rptr. 547], the court held that punitive damages are not recoverable in actions brought under the market share rule.

Because of the diversity of asbestos products, the market share rule does not apply in asbestos personal injury litigation (*Mullen* v. *Armstrong World Industries, Inc.* (1988) 200 Cal.App.3d 250, 257 [246 Cal.Rptr. 32]), although there may be an exception in cases involving asbestos exposure from brake pads (*Wheeler* v. *Raybestos-Manhattan* (1992) 8 Cal.App.4th 1152, 1158 [11 Cal.Rptr.2d 109]). Nevertheless, OCF contends five policy considerations identified by the *Magallanes* court also militate against permitting punitive damages in asbestos litigation: (1) ". . . the potential for 'overkill,' whereby early claimants securing large punitive damage awards may exhaust the economic resources of the alleged wrongdoers and may thereby even preclude the satisfaction of awards of compensatory damages" (*Magallanes* v. *Superior Court, supra,* 167 Cal.App.3d at p. 886); (2) ". . . the objectives of punishment and deterrence appear to be sufficiently met by the enormity of the present and prospective awards of compensatory damages" (*ibid.*); (3) ". . . the objective of deterrence has little relevance where the offending goods have long since been removed from the marketplace" (*ibid.*); (4) the unfairness of repetitive punishment for the same conduct (*id.* at p. 889); and (5) the unfairness of permitting some manufacturers who participated in the market but were not named as defendants to escape while others who were no more culpable are burdened with punitive damages (*ibid.*).

We do not discuss these considerations individually, for two reasons. First, their significance is questionable, since we have concluded this record does not establish "overkill." Second, the primary rationale of *Magallanes* simply does not apply in this case. The *Magallanes* court precluded punitive damages in market share liability cases because such liability is imposed without regard to fault. Punitive damages are predicated on fault; i.e., causation and malice or oppression. (Civ. Code, § 3294; *Magallanes* v. *Superior Court, supra,* 167 Cal.App.3d at pp. 887-888.) The *Magallanes* court concluded "in the context of the case at bench, in order to impose

punitive damages the plaintiff must first identify the defendant who supplied the DES which was ingested by the plaintiff's mother and caused the damage complained of and also prove that that defendant acted with malice or oppression. Consequently, punitive damages cannot be alleged in a case in which liability is based solely upon the participation of the defendant in the market." (*Magallanes* v. *Superior Court, supra,* 167 Cal.App.3d at p. 890.) Here, the estate identified OCF as the supplier of products which exposed Mr. Duffy to asbestos, and the estate proved causation and malice or oppression. Hence, it met the requirements for punitive damages recognized in *Magallanes.*

### B. *The Fraud-on-the-market Doctrine*

The fraud-on-the-market doctrine provides a presumption of reliance to plaintiffs alleging misrepresentations in the sale of securities. In *Mirkin* v. *Wasserman* (1993) 5 Cal.4th 1082, 1108 [23 Cal.Rptr.2d 101, 858 P.2d 568], the Supreme Court declined to enlarge the common law of deceit to include this doctrine. One of the reasons the court refused to do so was that punitive damages may be recovered on a deceit cause of action, whereas the securities laws do not permit punitive damages. OCF contends two policy reasons noted by the *Mirkin* court also apply to asbestos litigation: the potentially crushing liability presented by actual damages (*id.* at p. 1106), and the danger of overkill if juries in several lawsuits are able to assess punitive damages for the same transaction (*id.* at p. 1107). Again, however, the record does not indicate OCF is likely to be crushed by other damage awards, and the fundamental considerations underlying the ban on punitive damages in securities litigation do not apply in asbestos litigation.

The unavailability of punitive damages under both state and federal securities regulations can be traced to "a longstanding consensus" in federal case law that the burden on the securities business from punitive damages outweighs their contribution to the enforcement of securities laws. (*Mirkin* v. *Wasserman, supra,* 5 Cal.4th at p. 1106.) But in the mass tort context, including asbestos litigation, the opposite consensus has developed. The "overkill" argument has been in the air for many years; it was first prominently discussed in the much cited dicta of *Roginsky* v. *Richardson-Merrell, Inc.* (2d Cir. 1967) 378 F.2d 832, 839-840. Nevertheless, every appellate court in the nation to consider the argument that punitive damages should be barred in mass tort cases to prevent "overkill" has rejected the idea, though not without misgivings (and dissents) in some cases. The unanimity of this result has been recently recognized, and OCF cites no authority to disturb it. (See, e.g., *Ripa* v. *Owens-Corning Fiberglas, supra,* 660 A.2d at pp. 533-534;

*W.R. Grace & Co.-Conn.* v. *Waters, supra,* 638 So.2d at p. 504; *Dunn* v. *HOVIC, supra,* 1 F.3d at pp. 1385-1386.)

The *Mirkin* court observed that an assessment of punitive damages in a fraud-on-the-market case presumably accounts for the *total effect of the* defendant's misrepresentations on the market. Because the fraud is committed on the market as a whole, rather than on individual plaintiffs, awards in separate cases would punish the defendant repeatedly for the same transaction. (*Mirkin* v. *Wasserman, supra,* 5 Cal.4th at pp. 1106-1107.) This reasoning does not apply with the same force to asbestos personal injury cases in which each plaintiff must prove individual injury and causation. Furthermore, other policy reasons cited by the *Mirkin* court do not appear pertinent in asbestos litigation. No criminal sanctions serve the purpose of retribution, as in the securities context, nor does OCF contend the availability of punitive damages has exacerbated a problem with inflated settlement values in asbestos cases. (See *ibid.*) OCF's reliance on *Mirkin* is misplaced.

### DISPOSITION

The judgment is affirmed. The estate shall recover its costs on appeal.

Phelan, P. J., and Corrigan, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 15, 1997.