133 F.3d 927
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Frank GUZMAN, Plaintiff-Appellee,
and
Christian T.G. GERGER, Intervenor-Appellee,
v.
TOWER DEVELOPMENT, INC., Defendant-Appellant.
Frank GUZMAN, Plaintiff-Appellee,
and
Christian T.G. GERBER, Intervenor-Appellee,
v.
TOWER DEVELOPMENT, INC., Defendant-Appellant.
 No. 96-17232.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 6, 1997.
Decided Dec. 19, 1997.
 
 1
 Before: REINHARDT, LEAVY, and THOMAS, Circuits Judges.
 
 
 2
 MEMORANDUM*
 
 
 3
 Tower Development, Inc. ("Tower") appeals from the decision of the District Court of Guam, Appellate Division, affirming a punitive damage award of $2 million each to two individuals, Guzman and Gerber. Tower argues that the award violates its due process rights.
 
 
 4
 We review de novo the interpretation of Guam law by the Guam Superior Court. Cristobal v. Siegel, 26 F.3d 1488, 1491 (9th Cir.1994). We review the punitive damage award of the Guam Superior Court pursuant to the approach set forth in Morgan v. Woessner, 997 F.2d 1244 (9th Cir.1993).
 
 
 5
 Morgan instructs that due process scrutiny requires: (1) examination of the jury instructions to ensure that they describe the proper purposes of punitive damages; (2) examination of the trial court's review of the amount of the award and the record of its reasons for upholding or altering it; and (3) appellate court review which involves two inquiries: (a) whether the defendant was afforded the prior two stages of scrutiny and (b) a substantive review of the amount of the award. 997 F.2d at 1256-58.
 
 
 6
 The jury instructions comply with the due process standards articulated in Morgan and Pacific Mutual Life Ins. Co. v. Haslip, 499 U.S. 1 (1991), and therefore satisfy the first stage of review.
 
 
 7
 The Guam Appellate Division previously remanded the punitive damage award with instructions for the trial court to analyze it according to the factors set out in Haslip. The trial court reviewed the award and explained its reasons for upholding the award. The trial court's review and explanation of its reasons satisfy the second stage of review.
 
 
 8
 The purpose of our substantive review of the amount of the punitive damages award is to determine whether the award exceeds the amount necessary to accomplish the goals of punishment and deterrence. See Morgan, 997 F.2d at 1258. We conclude that it does not.
 
 
 9
 Subsequent to the trial court's decision in this case, the Supreme Court concluded that a defendant must receive fair notice not only of the conduct that will subject him to punishment but also of the severity of the penalty that may be imposed. BMW of N. America, Inc. v. Gore, 116 S.Ct. 1589, 1598 (1996). The jury found Tower liable for conduct which amounted to fraud and conversion. Guam Civil Code provides that in an action where the defendant has been found guilty of fraud, the plaintiff may recover punitive damages. See 20 G.C.A. § 2120. Tower therefore had fair notice of the possibility of punitive damages for its conduct. See Neibel v. Trans World Assur. Co., 108 F.3d 1123, 1131 (9th Cir.1997).
 
 
 10
 When determining if a defendant lacked fair notice of the severity of a punitive damage award, BMW sets forth three "guideposts" for measuring gross excessiveness: (1) the degree of reprehensibility of the defendant's conduct; (2) the disparity between the harm suffered and the punitive damage award; and (3) the difference between this remedy and the civil penalties authorized or imposed in comparable cases. BMW, 116 S.Ct. at 1598-99.
 
 
 11
 The Supreme Court stated in BMW, "Perhaps the most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." Id. at 1599. In BMW, the record disclosed no deliberate false statements, acts of affirmative misconduct, or improper motive. Id. at 1601. By contrast, the record in this case discloses evidence from which a jury could find Tower liable for fraud and conversion. We agree with the assessment of the Guam Appellate Division that Tower's view of its misdeeds shows "contempt for honest business dealings," and were clearly "reprehensible."
 
 
 12
 The second indicium of an excessive punitive damages award is its ratio to the actual harm inflicted on the plaintiff. Id. at 1601. The ratio between the compensatory award and the punitive award is approximately 17 to 1. There is no accepted mathematical formula for punitive damages. See Boyle v. Lorimar Prods., Inc., 13 F.3d 1357, 1361 (9th Cir.1994). We cannot say that the difference between the two figures in this case is so wide that the punitive damages have been divorced from the societal goals of retribution and deterrence. Id.; Stevens v. Owens-Corning Fiberglas Corp., 57 Cal.Rptr.2d 525, 539 (1996).
 
 
 13
 The third indicium of excessiveness is provided by comparing the punitive damage award and the civil or criminal penalties for comparable misconduct. BMW, 116 S.Ct. at 1603. Tower's conduct involved a violation of tort duties that do not readily lend themselves to a comparison with statutory penalties. Cf. Continental Trend Resources, Inc. v. OXY USA Inc., 101 F.3d 634, 641 (10th Cir.1996). The fundamental question is whether Tower had reasonable notice that its conduct could result in a substantial punitive award. Guzman and Gerber cite numerous cases involving punitive awards which would provide sufficient notice to Tower of the potential for a substantial award. See, e.g., Neal v. Farmer's Ins. Exchange, 148 Cal.Rptr. 389 (1978); Douglas v. Ostermeier, 2 Cal.Rptr.2d 594 (1991). We conclude that the punitive damage award in this case is not grossly excessive and therefore does not violate the Fourteenth Amendment.
 
 
 14
 Tower also argues that Guzman and Gerber did not satisfy their burden of demonstrating Tower's positive net worth. Tower claims that it had a negative net worth, and has been "destroyed" by the punitive damage award.
 
 
 15
 If a legal issue has not been discussed in any published Guam decision, we look to California as the rule for Guam. People of the Territory of Guam v. Quezada, 905 F.2d 263, 265 (9th Cir.1990). California law requires the plaintiff seeking punitive damages to carry the burden of production of evidence of defendant's net worth. See Adams v. Murakami, 284 Cal.Rptr. 318, 327 (1991); see also Boyle, 13 F.3d at 1359
 
 
 16
 The evidence in the record, and specifically the testimony of Ms. Espiritu who was the manager of Tower's financial affairs, demonstrates that plaintiffs have satisfied their burden of producing evidence of both assets and liabilities. See Adams, 284 Cal.Rptr. at 326. The evidence is sufficient for a jury to conclude that Tower had a positive net worth of at least $55 million.[1]
 
 
 17
 Tower also argues that plaintiffs' counsel improperly argued to the jury that Tower's parent was a "billion dollar company." However, Tower failed to make a timely objection, therefore, this issue is not preserved for appeal. See Hammer v. Gross, 932 F.2d 842, 847 (9th Cir.1991). Furthermore, the jury was instructed that the arguments of counsel are not evidence.
 
 
 18
 We have reviewed Tower's remaining arguments and find them to be without merit.
 
 
 19
 The decision of the Appellate Division is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Ms. Espiritu testified at length about Tower's property holdings, recent property sales, notes, loans, and receivables. At one point she stated that Tower had a negative net worth of $16 million. This comment was unsupported by any other testimony offered by Tower